**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

_____x

YALE NEW HAVEN HEALTH SERVICES
CORPORATION,

                Plaintiff,

        v.

PROSPECT MEDICAL HOLDINGS, INC.,
PROSPECT CT, INC., PROSPECT ECHN, INC.
D/B/A EASTERN CONNECTICUT HEALTH
NETWORK, PROSPECT ROCKVILLE
HOSPITAL, D/B/A THE ROCKVILLE
GENERAL HOSPITAL, PROSPECT
MANCHESTER HOSPITAL, INC. D/B/A THE
MANCHESTER MEMORIAL HOSPITAL,
PROSPECT WATERBURY, INC. D/B/A THE
WATERBURY HOSPITAL, PROSPECT CT
MEDICAL FOUNDATION, INC. D/B/A
EASTERN CT MEDICAL PROFESSIONALS
AND ALLIANCE MEDICAL GROUP,
PROSPECT ECHN HOME HEALTH, INC.
D/B/A VISITING NURSE AND HEALTH
SERVICES OF CONNECTICUT,
CARDIOLOGY ASSOCIATES OF GREATER
WATERBURY LLC, PROSPECT CT
MANAGEMENT SERVICES, INC. D/B/A
MEDICAL PRACTICE PARTNERS,
HEALTHCARE STAFFING ON DEMAND
LLC, PROSPECT WATERBURY
AMBULATORY SURGERY, LLC AND
PROSPECT WATERBURY HOME HEALTH,
INC. D/B/A VNA HEALTH AT HOME,

                Defendants.

_____x

Case No.: 3:25-cv-00105

Honorable Sarah F. Russell

January 27, 2025

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER THIS ACTION TO THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS</u>

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................1

RELEVANT BACKGROUND FACTS..........................................................................2

ARGUMENT ..................................................................................................................5

I.     THE ACTION SHOULD BE TRANSFERRED TO THE TEXAS
       BANKRUPTCY COURT PURSUANT TO 28 U.S.C. § 1412............................5

       A.     The Action is a "Core" Proceeding in the Defendants' Chapter 11 Cases .............7

       B.     The Action is "Related to" Defendants' Chapter 11 Cases ...................................9

       C.     The Interests of Justice and the Convenience of the Parties Both Support
              Transfer ...........................................................................................................10

              1.     Transfer of the Action is in the Interests of Justice ...................................10

              2.     The Convenience-of-the-Parties Factors Are Neutral or Support
                     Transfer ...................................................................................................11

II.    IN THE ALTERNATIVE, TRANSFER IS WARRANTED UNDER 28 U.S.C.
       1404(a) ...........................................................................................................15

CONCLUSION................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Baker v. Simpson*
    613 F.3d 346 (2d Cir. 2010), *cert. denied*, 562 U.S. 1149 (2011)...........................................8

*Billing v. Com. One, Inc.*
    186 F. Supp. 2d 375 (S.D.N.Y. 2002)......................................................................................13

*Bouchard v. State Emps. Ret. Comm'n*
    328 Conn. 345, 178 A.3d 1023 (2018) ...................................................................................16

*Celotex Corp. v. Edwards*
    514 U.S. 300 (1995).................................................................................................................10

*Credit Suisse AG v. Appaloosa Inv. Ltd. P'ship I*
    No. 15-CV-3474 SAS, 2015 WL 5257003 (S.D.N.Y. Sept. 9, 2015) ..............................14, 16

*In re Cuyahoga Equip. Corp.*
    980 F.2d 110 (2d Cir. 1992)................................................................................................7, 10

*In re DeFlora Lake Dev. Assocs., Inc.*
    571 B.R. 587 (Bankr. S.D.N.Y. 2017)......................................................................................8

*Del. Tr. Co. v. Wilmington Tr., N.A.*
    534 B.R. 500 (S.D.N.Y. 2015)..................................................................................10, 11, 15, 16

*In re Harnischfeger Indus., Inc.*
    246 B.R. 421 (Bankr. N.D. Ala. 2000) .....................................................................................6

*ICICI Bank Ltd. v. Essar Glob. Fund Ltd.*
    565 B.R. 241 (S.D.N.Y. 2017)..................................................................................................7

*In re Indicon*
    499 B.R. 395 (D. Conn. 2013) ..................................................................................................9

*In re Infiltrator Sys., Inc.*
    248 B.R. 715 (Bankr. D. Conn. 2000) ......................................................................................5

*In re Kwok*
    No. 3:23-CV-102 (KAD), 2024 WL 4349010 (D. Conn. Sept. 30, 2024) ................................9

*Leal v. Bednar*
    No. 3:16-CV-3424-G, 2017 WL 565176 (N.D. Tex. Feb. 13, 2017) ........................................6

*Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*
 620 B.R. 456 (S.D.N.Y. 2020)............................................................................7

*M.D. Sass Re Enter. Partners v. Cargill Fin. Servs. Corp.*
 No. 93 Civ. 7414(TPG), 1994 WL 97335 (S.D.N.Y. Mar. 18, 1994) ....................11

*In re Manville Forest Prods. Corp.*
 896 F.2d 1384 (2d Cir. 1990)........................................................................5, 11

*In re Michaelesco*
 288 B.R. 646 (D. Conn. 2003) ...........................................................................6

*In re Millennium Seacarriers, Inc.*
 419 F.3d 83 (2d Cir. 2005)................................................................................7

*In re New Century Holdings, Inc.*
 387 B.R. 95 (Bankr. D. Del. 2008) .....................................................................8

*Off. Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*
 306 B.R. 746 (S.D.N.Y. 2004)..........................................................11, 12, 14, 15

*In re Patriot Coal Corp.*
 No. 15-32450-KLP, 2016 WL 5360950 (Bankr. E.D. Va. Sept. 23, 2016)...............13

*Rescap Liquidating Trust v. PHH Mortg. Corp.*
 518 B.R. 259 (S.D.N.Y. 2014).......................................................................14, 15

*Smartmatic USA Corp. v. Dominion Voting Sys. Corp.*
 No. 13 CIV 5349 KBF, 2013 WL 5798986 (S.D.N.Y. Oct. 22, 2013) ......................6

*SPV Osus Ltd. v. UBS AG*
 882 F.3d 333 (2d Cir. 2018)..............................................................................10

*In re U.S. Lines, Inc.*
 197 F.3d 631 (2d Cir. 1999)...............................................................................7

*Vaccaro v. Shell Beach Condo., Inc.*
 169 Conn. App. 21, 148 A.3d 1123 (2016) ..........................................................16

*Weisman v. Se. Hotel Properties Ltd. P'ship*
 No. 91 CIV. 6232 (MBM), 1992 WL 131080 (S.D.N.Y. June 1, 1992) ...................6

Statutes

11 U.S.C. § 105......................................................................................................7

11 U.S.C. § 362...................................................................................................4, 7

28 U.S.C. § 157......................................................................................................8

28 U.S.C. § 1334 .................................................................................................7, 9

28 U.S.C. § 1404 ..................................................................................... *passim*

28 U.S.C. § 1409 ......................................................................................16

28 U.S.C. § 1412 ..................................................................................... *passim*

Conn. Gen. Stat. Ann. § 52-576 ..............................................................16

Uniform Interstate Depositions and Discovery Act ................................12

<u>Other Authorities</u>

Fed. R. Bankr. P. 7019 ...............................................................................5

Fed. R. Bankr. P. 7087 ...............................................................................5

Fed. R. Bankr. P. 9027 ...............................................................................5

Following the filing of their Notice of Removal on January 22, 2025 (ECF Doc. No. 1), Defendants Prospect Medical Holdings, Inc., Prospect CT, Inc., Prospect ECHN, Inc. d/b/a Eastern Connecticut Health Network, Prospect Rockville Hospital, Inc. d/b/a The Rockville General Hospital, Prospect Manchester Hospital, Inc. d/b/a The Manchester Memorial Hospital, Prospect Waterbury, Inc. d/b/a The Waterbury Hospital, Prospect CT Medical Foundation, Inc. d/b/a Eastern CT Medical Professionals and Alliance Medical Group, Prospect ECHN Home Health, Inc. d/b/a Visiting Nurse and Health Services of Connecticut, Cardiology Associates of Greater Waterbury, LLC, Prospect CT Management Services, Inc. d/b/a Medical Practice Partners, Healthcare Staffing On Demand, LLC, Prospect Waterbury Ambulatory Surgery, LLC, and Prospect Waterbury Home Health, Inc. d/b/a VNA Health at Home (collectively, "Defendants"), respectfully submit this Memorandum of Law, along with the accompanying Declaration of Robert S. Friedman ("Friedman Decl."), in support of their contemporaneously-filed motion pursuant to 28 U.S.C. § 1412, or in the alternative, pursuant to 28 U.S.C. § 1404(a) to transfer venue of the present action, which was originally commenced in the Superior Court of the State of Connecticut (the "State Court"), Docket No.: X07-HHD-CV24-6184328-S and was subsequently removed to this Court (the "Action"), to the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Texas Bankruptcy Court"), where all of the Defendants' chapter 11 cases (the "Chapter 11 Cases") have been pending as of January 11, 2025.

## PRELIMINARY STATEMENT

The Action is directly related to, and part and parcel of, Defendants' and affiliated debtors' Chapter 11 Proceedings in the Bankruptcy Court. It was for this reason that Defendants removed the Action to this Court on January 22, 2025, and is the reason that Defendants are now seeking to transfer the Action to the Texas Bankruptcy Court, which is best equipped to adjudicate the proceeding as an adversary proceeding within the Chapter 11 Cases.

As set forth more fully below, transfer is warranted whether this Court applies the bankruptcy transfer statute (28 U.S.C. § 1412) or the general civil change-of-venue statute (28 U.S.C. § 1404(a)). Both statutes rely upon the interest-of-justice and/or convenience-of-parties factors, and those factors either support transfer or are neutral here. In particular, the timing of this removal assures the efficient transition of this case from the State Court to the Texas Bankruptcy Court: On the eve of removal, fact discovery in the Action was almost concluded; expert discovery had not yet begun; and, while the plaintiff had made an early motion for summary judgment, Defendants' time to respond had not yet come due. Critically, pursuant to the parties' agreement in the underlying contract, there was to be no jury trial in this case; rather the trial was to be a bench trial before the State Court. Now that Defendants are chapter 11 debtors, the Texas Bankruptcy Court is best positioned to adjudicate the Action as part of its overall management of Defendants' and affiliated debtors' bankruptcy estates.

Accordingly, Defendants respectfully move for an order directing transfer of this Action to the Texas Bankruptcy Court, so that it can be adjudicated as an adversary proceeding in the Chapter 11 Cases.

## **RELEVANT BACKGROUND FACTS**

Plaintiff Yale New Haven Health Services Corporation ("Plaintiff") commenced the Action in the State Court on May 1, 2024, with the filing of a complaint. (Friedman Decl. ¶ 3.) Plaintiff in its original and ensuing amended complaints sought, *inter alia*, a declaratory judgment that Plaintiff is not required to close on the transactions contemplated by an asset purchase agreement that Plaintiff and Defendants entered into on or about October 5, 2022, under which

Plaintiff would purchase three Connecticut hospitals and related medical facilities from Defendants for $435 million (the "APA").[1]  (*See id.* ¶ 4.)

Defendants, in both their original and amended answers, responded to Plaintiff's claims and asserted counterclaims against Plaintiff, seeking a judgment, *inter alia*, (i) declaring that Plaintiff breached the APA and is required to close on the transactions contemplated by the APA, and (ii) ordering Plaintiff to close on the transactions contemplated by the APA and pay Defendants the purchase price or, in the alternative, pay damages to Defendants.  (*See id.* ¶ 6 & Ex. B (Notice of Removal attaching operative pleadings).)

As of January 11, 2025 (the date that, as set forth below, the Chapter 11 Cases commenced), the parties in the Action had completed significant fact discovery and were about to begin expert discovery.  (Friedman Decl. ¶ 9.)  Specifically, apart from a handful of issues that the parties had identified in each other's productions, party document productions and most non-party productions had been completed, and the parties had taken 20 fact depositions, and had contemplated taking approximately 15 additional depositions (several of them of non-party witnesses) by the end of January 2025.  (*Id.* ¶ 10.)  This was because, under the scheduling order issued by the State Court, fact discovery was scheduled to conclude on January 28, 2025, and opening affirmative expert reports were to be served on January 31, 2025.  (*Id.* & Ex. A.)  In turn, expert discovery was

---

[1] Plaintiff presumably commenced the action in the State Court because the APA contains a Connecticut choice-of-law and choice-of-forum clause, under which, with an exception not relevant here, "the venue of all disputes, claims, and lawsuits arising hereunder shall lie in the state and federal courts located in the State of Connecticut. Each Party hereby waives, and agrees not to assert, any defense in any Action arising out of or relating to this Agreement or the transactions contemplated by the Transaction Documents that such Party is not subject thereto or that such Action may not be brought or is not maintainable in such courts or that this Agreement may not be enforced in or by such courts or that such Party's property is exempt or immune from execution or that such Action is brought in an inconvenient forum or that the venue of such Action is improper."  (Friedman Decl. ¶ 5 (quoting APA § 10.3).)  As explained *infra* Point I.C, this forum-selection clause is no barrier to transfer here.

scheduled to conclude by March 7, 2025, and a bench trial was to be held before the State Court beginning April 22, 2025.[2]  (*Id.* ¶ 10.)

On January 11, 2025, Defendants and their debtor affiliates filed voluntary chapter 11 petitions in the Texas Bankruptcy Court, which are being jointly administered by the Texas Bankruptcy Court under the main Case No. 25-80002 (SGJ) (defined above as the "Chapter 11 Cases").  (*Id.* ¶ 15.)  Since that chapter 11 filing, the Texas Bankruptcy Court has already heard and granted First Day Motions in the Chapter 11 Cases.  (*Id.*)

As a result of the commencement of the Bankruptcy Case, the Action (including the above-referenced deadlines) was automatically stayed pursuant to 11 U.S.C. § 362.  (*Id.* ¶ 16.) Defendants filed a notice of the automatic stay with the State Court on Monday, January 13, 2025. (*Id.* & Ex. B.)

On January 22, 2025, Defendants removed the Action to this Court with the filing of a Notice of Removal (ECF Doc. No. 1), noting that Defendants would thereafter seek to transfer the

---

[2] The trial before the State Court was to be a bench trial because the parties waived the right to a jury trial in Section 10.4 of the APA:

> **Waiver of Jury Trial.**  EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY ACTION DIRECTLY OR INDIRECTLY ARISING OUT OF, INVOLVING OR RELATING TO THIS AGREEMENT, ANY OTHER TRANSACTION DOCUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY, WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. THE PARTIES AGREE THAT ANY OF THEM MAY FILE A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY AND BARGAINED-FOR AGREEMENT AMONG THE PARTIES IRREVOCABLY TO WAIVE TRIAL BY JURY AND THAT ANY ACTION OR PROCEEDING WHATSOEVER AMONG THEM RELATING TO THIS AGREEMENT OR ANY OTHER TRANSACTION DOCUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

(Friedman Decl. ¶ 13 (quoting APA § 10.4).)

Action to the Texas Bankruptcy Court for adjudication as part of the Chapter 11 Cases.  (*Id.* ¶ 17 & Ex. B (Notice of Removal with exhibits).)  That same day, Defendants filed a copy of the Notice of Removal in the State Court and served a copy on Plaintiff's counsel pursuant to Rule 9027(b) of the Federal Rules of Bankruptcy Procedure, thus effecting the removal.  *Id.* ¶ 18 & Ex. C (notice of filing of notice of removal); *see* Fed. R. Bankr. P. 9027(c) ("Removal becomes effective when the notice is filed under (b)(2) [with the state court].  The parties must proceed no further in the court from which the claim or cause of action was removed, unless it is remanded.").  A docket notation on the State Court docket for the Action confirms that, as of January 22, 2025, the Action was "REMOVED TO FEDERAL DISTRICT COURT . . . BY THE DEFENDANT [*sic*]." (Friedman Decl. ¶ 19 & Ex. D (docket sheet as of January 27, 2025).)

**ARGUMENT**

**I.    THE ACTION SHOULD BE TRANSFERRED TO THE TEXAS BANKRUPTCY COURT PURSUANT TO 28 U.S.C. § 1412**

The Court should transfer the Action to the Northern District of Texas, Dallas Division to be resolved by the bankruptcy court in which the Defendants' Chapter 11 Cases are pending— namely, the Texas Bankruptcy Court.  Section 1412 of title 28 ("Section 1412") allows a district court to transfer a "case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."  28 U.S.C. § 1412; *see also* Fed. R. Bankr. P. 7087 ("On motion and after a hearing, the court may transfer an adversary proceeding, or any part of it, to another district under 28 U.S.C. § 1412—except as provided in Rule 7019(b).").  Under Section 1412, the "district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy."  *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1391 (2d Cir. 1990); *see also In re Infiltrator Sys.,*

*Inc.*, 248 B.R. 715, 716 (Bankr. D. Conn. 2000) ("There is also a presumption that civil proceedings should be in the home court.") (citation and internal quotation marks omitted).

Section 1412's reference to a "case or proceeding under title 11" has been interpreted by several courts, in this Circuit and elsewhere, to refer not only to "core" proceedings arising under title 11 or in a title 11 proceeding, but also proceedings that "related to" a pending title 11 proceeding. *See, e.g.*, *Smartmatic USA Corp. v. Dominion Voting Sys. Corp.*, No. 13 CIV. 5349 KBF, 2013 WL 5798986, at *5 (S.D.N.Y. Oct. 22, 2013) (granting motion to transfer New York action to District of Colorado on the grounds that "[t]his Court has already determined that Plaintiffs' case is 'related to' a bankruptcy proceeding, which is why it was removed to federal court in the first place, and that bankruptcy proceeding is pending in the District of Colorado"); *Weisman v. Se. Hotel Properties Ltd. P'ship*, No. 91 CIV. 6232 (MBM), 1992 WL 131080, at *6 (S.D.N.Y. June 1, 1992) ("Section 1412 applies to cases under Title 11, civil proceedings arising under Title 11 and civil proceedings related to cases under Title 11."); *Leal v. Bednar*, No. 3:16-CV-3424-G, 2017 WL 565176, at *3 (N.D. Tex. Feb. 13, 2017) ("agree[ing] that the term 'proceeding' in section 1412 encompasses claims merely related to core proceedings. Therefore, section 1412 is the statute governing transfer of claims related to title 11 actions"); *In re Michaelesco*, 288 B.R. 646, 653 n.6 (D. Conn. 2003) (citing, *inter alia*, *In re Harnischfeger Indus., Inc.,* 246 B.R. 421, 434–35 (Bankr. N.D. Ala. 2000) ("conclud[ing] that 28 U.S.C. § 1412 is the applicable statute for determining whether a transfer of proceedings related to the bankruptcy case is appropriate").[3]

As set forth in Defendants' Notice of Removal and below, the Action satisfies the requirements for both a "core" and "related to" proceeding, thus qualifying for consideration under

---

[3] As set forth *infra* Point II, even if the general venue transfer statute, 28 U.S.C. § 1404(a), applies, rather than Section 1412, transfer of the Action is warranted.

Section 1412.   In turn, given that the Action will have significant impact on Defendants' bankruptcy estates and had almost completed fact discovery upon removal, the "interest of justice" and "convenience of the parties" prongs under Section 1412 militate in favor of transfer.

### A.        The Action is a "Core" Proceeding in the Defendants' Chapter 11 Cases

Even those courts in this Circuit that have not applied Section 1412 to "related to" cases nonetheless agree that Section 1412 applies to "core" matters.  *See, e.g.*, *Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 620 B.R. 456, 461 (S.D.N.Y. 2020) ("A common practice in this District when determining whether a case may be transferred pursuant to Section 1412 is to look to whether the action is 'core' or 'non-core.'"); *ICICI Bank Ltd. v. Essar Glob. Fund Ltd.*, 565 B.R. 241, 248 (S.D.N.Y. 2017) ("Transfer of venue for core proceedings as well as bankruptcy petitions themselves . . . is governed by 28 U.S.C. § 1412.").  This makes sense, as the Second Circuit has long recognized that "[a] primary goal of bankruptcy law is to centralize adjudication of a bankrupt's estate into a single court."  *In re Millennium Seacarriers, Inc.*, 419 F.3d 83, 96 (2d Cir. 2005); *see also In re U.S. Lines, Inc.*, 197 F.3d 631, 640 (2d Cir. 1999) ("one of the core purposes of bankruptcy effectuated by Sections 362 and 105 of the Code is to allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas") (citation and internal quotation marks omitted); *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) (noting "the strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court").  Indeed, Congress has vested "exclusive jurisdiction of all property, wherever located, of the debtor as of the commencement of such case, and of property of the estate" in the district court for the district where a debtor's chapter 11 cases is pending.  28 U.S.C. § 1334(e)(1).

The Action is just such a "core" matter.  A civil proceeding "arising in . . . a case under title 11" is a "core proceeding" over which the bankruptcy court has plenary jurisdiction.  *Baker v. Simpson*, 613 F.3d 346, 350 (2d Cir. 2010), *cert. denied*, 562 U.S. 1149 (2011); *see* 28 U.S.C. § 157(b)(1) ("Bankruptcy judges may hear and determine . . . all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.").  By statute, core proceedings include, but are not limited to, *inter alia*, "matters concerning the administration of the estate," "allowance or disallowance of claims against the estate," "counterclaims by the estate against persons filing claims against the estate," "orders to turn over property of the estate," and "other proceedings affecting the liquidation of the assets of the estate."  28 U.S.C. § 157(b)(2)(A), (B), (C), (E), (O).

The Action meets these criteria for "core" status.  For example, the Action involves counterclaims by Defendants that, if successful, would contribute an additional $435 million and miscellaneous damages in funds for the benefit of Defendants' chapter 11 estates.  This is explicitly among the core bankruptcy matters enumerated in 28 U.S.C. § 157, including matters that affect the "administration of the estate," "allowance or disallowance of claims against the estate," and "counterclaims by the estate against persons [who may] fil[e] claims against the estate."  *See* 28 U.S.C. § 157(b)(2)(A), (B), (C).

It would be incorrect to say that the Action involves mere claims for money damages arising under state law that are only incidentally related to the Chapter 11 Cases.  "A determination on whether certain property is property of the bankruptcy estate is not only a core proceeding, it is a proceeding that involves th[e] [Bankruptcy] Court's exclusive jurisdiction."  *In re DeFlora Lake Dev. Assocs., Inc.*, 571 B.R. 587, 593 (Bankr. S.D.N.Y. 2017); *see also In re New Century*

*Holdings, Inc.*, 387 B.R. 95, 105 (Bankr. D. Del. 2008) ("Various courts have concluded that matters requiring a declaration of whether certain property comes within § 541's definition of "property of the estate" are core proceedings."). Here, in the Action, the Plaintiff is attempting to call into question the scope of the property of the estates—namely, whether Defendants' estates should include the $435 million purchase price and miscellaneous damages, on the one hand, or the hospital assets themselves, on the other hand. Defendants need to know, in order to administer their estates, whether they are able to recover the purchase price pursuant to the APA for the benefit of the estates, or whether the hospital assets may be available to sell or otherwise reorganize through the Chapter 11 Cases.

The issues raised by Plaintiff and Defendants in the Action, and the uncertainty with respect thereto, thus impact the debtor-Defendants' ability to administer their estates and determine their strategy with respect to the underlying hospital assets. These issues go to the core functions of the Texas Bankruptcy Court in Defendants' Chapter 11 Cases, and should therefore be adjudicated in the context of those bankruptcy proceedings.

**B.      The Action is "Related to" Defendants' Chapter 11 Cases**

As noted, several courts have held that Section 1412 is the right transfer statute to apply even for proceedings that are merely "related to" the underlying title 11 proceeding. Congress has granted the federal courts jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). "Jurisdiction under 28 U.S.C. § 1334(b)'s 'related to' prong rests where the proceeding's outcome 'could conceivably have any effect on the estate being administered in bankruptcy.'" *In re Kwok*, No. 3:23-CV-102 (KAD), 2024 WL 4349010, at *9 (D. Conn. Sept. 30, 2024) (quoting *In re Indicon*, 499 B.R. 395, 401 (D. Conn. 2013)). "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way

impacts upon the handling and administration of the bankrupt estate." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 340 (2d Cir. 2018) (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995)).

For the same reasons set forth *supra* Point I.B, the Action "relates to" the Chapter 11 Cases because its "outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively)," and would "impact[ ] upon the handling and administration of the bankrupt estate." *SPV Osus*, 882 F.3d at 340.  The Action is thus eligible for transfer under Section 1412 on this basis as well.

### C.    The Interests of Justice and the Convenience of the Parties Both Support Transfer

As noted, Section 1412 is phrased disjunctively:  it authorizes transfer, assuming subject matter jurisdiction, "in the interest of justice *or* for the convenience of the parties."  28 U.S.C. § 1412 (emphasis added).  In this case, the Action satisfies both components of the Section 1412 test.

#### 1.    Transfer of the Action is in the Interests of Justice

"[T]he interests of justice are furthered when a case is transferred to a venue that would promote judicial economy." *Del. Tr. Co. v. Wilmington Tr., N.A.*, 534 B.R. 500, 520 (S.D.N.Y. 2015).  Thus, courts within this Circuit have long held that the "existence of a related action pending in the transferee court weighs heavily towards transfer." *Id.*  Under such circumstances, "litigating related actions in the same tribunal fosters efficient case administration, avoids needless expense, and avoids the risk of conflicting rulings." *Id.*

In the bankruptcy context, "the 'strong bankruptcy code policy' in favor of centralized litigation in the district where a related bankruptcy case is pending" satisfies this factor. *Id.* at 521 (quoting *Cuyahoga*, 980 F.2d at 117).  Accordingly, where, as here, "resolution of this dispute

could affect the rights and prioritization among creditors, '[t]he interests of justice overwhelmingly dictate transfer' to the court overseeing the bankruptcy proceedings." *Id.* (quoting *M.D. Sass Re Enter. Partners v. Cargill Fin. Servs. Corp.,* No. 93 Civ. 7414(TPG), 1994 WL 97335, at *2 (S.D.N.Y. Mar. 18, 1994)).

The pendency of the Chapter 11 Cases, coupled with the lack of prejudice Plaintiff and other interested parties would face if the Action were to be transferred, confirm that the interest of justice supports transfer here. As noted *supra*, the Action necessarily impacts the scope and administration of Defendants' bankruptcy estates, and thus risks creating conflict between the Action and the Chapter 11 Cases. Transfer of the Action to the Texas Bankruptcy Court, before which it can be adjudicated as an adversary proceeding under the rubric of the Chapter 11 Cases, is the only way to ensure judicial efficiency in all proceedings.

2.      The Convenience-of-the-Parties Factors Are Neutral or Support Transfer

Motions to transfer under Section 1412 "are within the discretionary authority of the district courts, according to an individualized, case-by-case consideration of convenience and fairness." *Off. Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 306 B.R. 746, 749 (S.D.N.Y. 2004) (quoting *Manville*, 896 F.2d at 1391) (internal quotation marks omitted). The convenience factors under Section 1412 are the same as the convenience factors under 28 U.S.C. § 1404(a), the general civil change-of-venue statute. *See Del. Tr.*, 534 B.R. at 519 ("In determining whether to transfer under 28 U.S.C. § 1412, courts consider the same factors as under the general transfer provision, 28 U.S.C. § 1404(a)."); *Heyman*, 306 B.R. at 749 ("In determining whether to grant a motion for transfer under § 1412, courts consider substantially the same factors as for a motion to transfer under 28 U.S.C. § 1404(a).").

Those factors include:

> (1) the plaintiff's choice of forum; (2) the locus of the operative
> facts; (3) the convenience and relative means of the parties; (4) the
> convenience of witnesses; (5) the availability of process to compel
> the attendance of witnesses; (6) the location of physical evidence;
> (7) the relative familiarity of court with the applicable law; and (8)
> the interests of justice, including the interests of trial efficiency.

*Heyman*, 306 B.R. at 749-50.

Here, these factors are essentially neutral or support transfer.

*First*, as to convenience and relative means of the parties, both Plaintiff and Defendants are represented by national law firms whose offices are located outside of Connecticut:  indeed, the presumption in fact discovery has been that party deponents were to be deposed at national counsel's offices in New York City, not in Connecticut.  (Friedman Decl. ¶¶ 8, 11.)  Moreover, national counsel for Plaintiff (Cravath, Swaine & Moore LLP) has significant experience in federal courts nationwide, including the Texas Bankruptcy Court.  (*Id.* ¶ 8.)  Accordingly, this factor supports transfer.

*Second*, the factors of the locus of the operative facts, the convenience of witnesses, availability of process to compel the attendance of witnesses, and the location of physical evidence are neutral or supportive with respect to transfer.  As noted *supra* 3-4, fact discovery was almost concluded by the time the Chapter 11 Cases were commenced, and the majority of fact depositions were taken.  Moreover, even when the Action was pending before the State Court, the parties issued subpoenas (including for production of documents and deposition testimony) to several out-of-state non-parties, and domesticated those subpoenas in the witnesses' respective states (such as through the Uniform Interstate Depositions and Discovery Act).   (Friedman Decl. ¶ 12.) Transferring the Action to the Texas Bankruptcy Court, a federal court that (like this Court) enjoys

nationwide subpoena powers, would only serve to facilitate any remaining fact discovery and trial testimony.

*Third*, the factor of court familiarity with applicable law is neutral.  The Action hinges on straightforward application of basic contract law principles.  "It is assumed that the federal courts in both this district and the [Northern] District of [Texas]  are equally familiar with the legal principles necessary to resolve this case.  *Billing v. Com. One, Inc.*, 186 F. Supp. 2d 375, 379 (S.D.N.Y. 2002); *see also In re Patriot Coal Corp.*, No. 15-32450-KLP, 2016 WL 5360950, at *5 (Bankr. E.D. Va. Sept. 23, 2016) (denying motion for remand for abstention regarding commitment letter that contained New York choice-of-law clause, explaining, as to this issue, that "[t]he state law contract issues are not complex").

The only one of the convenience factors that may militate against transfer is Plaintiff's decision to file in the State Court, coupled with the APA's Connecticut forum selection clause. Even this factor, however, is not absolute, and is easily overridden by the public interest in having a lawsuit against the debtor that, like the present one, is closely intertwined with a pending chapter 11 proceeding, adjudicated before the bankruptcy court administering the debtor's estate.  A sister district court in this Circuit so determined in concluding that even a mandatory (New York) forum selection clause did not override the public interest in having the lawsuit adjudicated in the home bankruptcy court in the Northern District of Illinois:

> Plaintiff argues that defendants waived their right to seek transfer from New York in the [agreement's] forum selection clause.  To support this, plaintiffs cite to the Supreme Court's decision *in Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas,* which held, in a different context, that "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases."
>
> Plaintiff's argument is not persuasive.  Assuming the forum selection clause here is mandatory, "[t]he existence of a mandatory forum-selection clause does not by itself dispose of a motion to

> transfer under § 1404(a)." Accordingly, it is still appropriate to consider the fifth factor (interests of justice, including trial efficiency), which, in this case, is dispositive. It also addresses the concerns raised in *Atlantic Marine,* which was greatly informed by the notion that "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote "the interest of justice," "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases."
>
> It is not difficult to conclude that enforcing the forum selection clause here would not serve the interests of justice. The palpable conflict between this action and the Bankruptcy Case evokes a public interest sufficient to outweigh the forum selection clause. The claims are "closely intertwined" with the proceedings in the Northern District of Illinois. The rights that plaintiff seeks to enforce under the contract are in direct conflict with defendants' status and rights under the Bankruptcy Code. Moreover, they undercut the power of the Bankruptcy Court and jeopardize the legitimacy of the Debtors' reorganization.

*Credit Suisse AG v. Appaloosa Inv. Ltd. P'ship I*, No. 15-CV-3474 SAS, 2015 WL 5257003, at

*10–11 (S.D.N.Y. Sept. 9, 2015) (footnotes omitted); *accord Rescap Liquidating Trust v. PHH

Mortg. Corp.*, 518 B.R. 259, 268 (S.D.N.Y. 2014) ("when a proceeding is core, the public interest

in centralizing bankruptcy proceedings always outweighs the public and private interests in

enforcing a forum-selection clause"); *Heyman*, 306 B.R. at 750 (noting that the factor of plaintiff's

choice of forum and the presumption in favor of the bankruptcy court administering the underlying

bankruptcy proceeding "effectively cancel each other out").

The reasoning of *Credit Suisse* is directly applicable to this case. Standalone adjudication

of the Action outside of the Chapter 11 Cases risks conflict with the administration of Defendants'

estates in those cases. Indeed, as noted above, the scope of Defendants' estates will be determined

by the outcome of the Action. Accordingly, both the interests of justice and the convenience of

the parties warrant transfer of the Action to the Texas Bankruptcy Court so that all issues regarding

Defendants' estates, including those raised in the Action, can be resolved in "a single court." *See Del. Tr.*, 534 B.R. at 521.

## II.    IN THE ALTERNATIVE, TRANSFER IS WARRANTED UNDER 28 U.S.C. 1404(a)

Even if this Court were to determine that Section 1412 does not apply to the action, transfer would still be warranted under the general civil venue-transfer statute, section 1404(a) of title 28 ("Section 1404(a)").  That section allows a district court to transfer "any civil action to any other district . . . where it might have been brought," when the transfer is "for the convenience of parties and witnesses [and] in the interest of justice."  28 U.S.C. § 1404(a).

As noted, the factors considered by a court under a Section 1404(a) motion are the same as those considered under a Section 1412 motion—*i.e.*, interest of justice and convenience of the parties.  *See ResCap*, 518 B.R. at 267 ("The analysis under both statutes is substantially the same."); *accord Heyman*, 306 B.R. at 749 (S.D.N.Y.2004) ("In determining whether to grant a motion for transfer under § 1412, courts consider substantially the same factors as for a motion to transfer under 28 U.S.C. § 1404(a).").  As the language of the statute suggests, however, there are two main differences:  (i) the court must determine that the transferee court is in a district where the civil action "might have been brought" (28 U.S.C. § 1404(a); and (ii) the interest of justice and convenience of parties factors under Section 1404(a) are conjunctive ("and"), rather than disjunctive ("or") as under Section 1412.

For the reasons set forth *supra* Point I, the interest-of-justice and convenience-of-parties factors either support or are neutral with respect to transfer here.  Moreover, the Texas Bankruptcy Court is a forum where the Action could have been brought in the first place.  This is because, had

Plaintiff and Defendants refrained until now[4] from asserting their claims and counterclaims from the Action, the Texas Bankruptcy Court would have been the proper forum for the Action, given the automatic stay, and notwithstanding the APA's forum selection clause.  *See* 28 U.S.C. § 1409(a) ("[A] proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."); *Credit Suisse*, 2015 WL 5257003, at *8 n.75 (determining, notwithstanding New York forum selection clause, that, "[a]s a threshold matter, this action could have been brought in the Northern District of Illinois, because the Bankruptcy Case is pending there and the parties have been active participants in that case"); *Del. Tr.*, 534 B.R. at 520 ("This action could have been brought in the District of Delaware. Delaware is where the bankruptcy proceedings are pending.").  Accordingly, transfer is likewise proper under Section 1404(a).

## CONCLUSION

Accordingly, for the reasons set forth herein and that may be advanced by way of reply and at oral argument, Defendants request that the Action promptly be transferred to the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, to be adjudicated alongside the Defendants' Chapter 11 Cases, *In re Prospect Medical Holdings, Inc.*, Ch. 11 Case No. 25-80002 (SGJ) (Jointly Administered).

---

[4] The parties' respective claims would have been timely if brought now.  Breach of contract claims in Connecticut are subject to a six-year statute of limitations.  *See* Conn. Gen. Stat. Ann. § 52-576 ("No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues.").  In an action for breach of contract, the cause of action accrues at the time the injury has been inflicted. *See, e.g., Vaccaro v. Shell Beach Condo., Inc.*, 169 Conn. App. 21, 35, 148 A.3d 1123, 1135 (2016).  Claims for declaratory relief are subject to the same limitations period as the underlying claim.  *See, e.g., Bouchard v. State Emps. Ret. Comm'n*, 328 Conn. 345, 356, 178 A.3d 1023, 1029 (2018) (finding that a claim for pension benefits was more akin to a claim asserting a breach of a statutory duty, to which the tort statute of limitations applied, than to a breach of contract claim, and applying the three-year tort statute of limitations).  Here, given that the APA was executed in October 2022, the parties are well within the six-year statute of limitations.

Respectfully submitted,

By:  */s/ Robert S. Friedman*
Robert S. Friedman (ct31256)
Danielle Vrabie
Joshua I. Schlenger
SHEPPARD, MULLIN, RICHTER & HAMPTON
LLP
30 Rockefeller Plaza
New York, NY 10112-0015
(212) 653-8700
rfriedman@sheppardmullin.com
dvrabie@sheppardmullin.com
jschlenger@sheppardmullin.com

Amy P. Blume, Esq.
Bershtein, Volpe, & McKeon, PC 900 Chapel Street,
11th Floor New Haven, CT 06510
Juris # ct03821
Tel. # (203) 777-5800
apb@bvmlaw.com

*Counsel for Defendants*