# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| YALE NEW HAVEN HEALTH SERVICES CORPORATION,<br><br>*Plaintiff*,<br><br>v.<br><br>PROSPECT MEDICAL HOLDINGS, INC., PROSPECT CT, INC., PROSPECT ECHN, INC. D/B/A EASTERN CONNECTICUT HEALTH NETWORK, PROSPECT ROCKVILLE HOSPITAL, INC. D/B/A THE ROCKVILLE GENERAL HOSPITAL, PROSPECT MANCHESTER HOSPITAL, INC. D/B/A THE MANCHESTER MEMORIAL HOSPITAL, PROSPECT WATERBURY, INC. D/B/A THE WATERBURY HOSPITAL, PROSPECT CT MEDICAL FOUNDATION, INC. D/B/A EASTERN CT MEDICAL PROFESSIONALS AND ALLIANCE MEDICAL GROUP, PROSPECT ECHN HOME HEALTH, INC. D/B/A VISITING NURSE AND HEALTH SERVICES OF CONNECTICUT, CARDIOLOGY ASSOCIATES OF GREATER WATERBURY, LLC, PROSPECT CT MANAGEMENT SERVICES, INC. D/B/A MEDICAL PRACTICE PARTNERS, HEALTHCARE STAFFING ON DEMAND, LLC, PROSPECT WATERBURY AMBULATORY SURGERY, LLC AND PROSPECT WATERBURY HOME HEALTH, INC. D/B/A VNA HEALTH AT HOME,<br><br>*Defendants*. | No. 3:25-cv-00105-SFR<br><br><br><br>January 28, 2025 |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR ABSTENTION AND EQUITABLE REMAND

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ ii

I.      PRELIMINARY STATEMENT ........................................................................1

II.     FACTUAL BACKGROUND .............................................................................4

        A.      The Contemplated Transaction. ...........................................................4

        B.      Since Signing, Prospect Has Repeatedly Violated the APA......................5

        C.      YNHH Brings This Action Asserting State Law Contract Claims.............7

        D.      After More Than Seven Months of Litigation—Including YNHH
                Filing for Summary Judgment—and Days Prior to the Close of
                Fact Discovery, Prospect Files for Bankruptcy and Removes This
                Case.....................................................................................................8

III.    THRESHOLD ISSUE........................................................................................10

        A.      This Court Should Rule on YNHH's Motion for Abstention and
                Equitable Remand Before Considering Prospect's Request to
                Transfer Venue....................................................................................10

IV.     ARGUMENT ....................................................................................................12

        A.      This Court Must Abstain Pursuant to Section 1334(c)(2). .......................12

        B.      In the Alternative, the Doctrines of Permissive Abstention and
                Equitable Remand Weigh Heavily in Favor of State Court
                Adjudication........................................................................................26

CONCLUSION.............................................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akorn, Inc. v. Fresenius Kabi AG,*
    No. CV 2018-0300-JTL, 2018 WL 4719347 (Del. Ch. Oct. 1, 2018), *aff'd,*
    198 A.3d 724 (Del. 2018) ........................................................................25

*Allied Mech. & Plumbing Corp. v. Dynamic Hostels Hous. Dev. Fund Co.,*
    62 B.R. 873 (Bankr. S.D.N.Y. 1986).......................................................24

*Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC,*
    No. 11 Civ. 2232, 2011 WL 4965150 (S.D.N.Y. Oct. 19, 2011) ..............22

*Baker v. Simpson,*
    613 F.3d 346 (2d Cir. 2010).....................................................................15

*Beard v. Braunstein,*
    914 F.2d 434 (3d Cir. 1990).....................................................................17

*BGC Partners, Inc. v. Avison Young (Can.), Inc.,*
    919 F.Supp.2d 310 (S.D.N.Y. 2013).........................................................12

*Boy Scouts of Am. v. Hartford Accident & Indem. Co.,*
    No. 3:19-CV-1318-B, 2020 WL 4530370 (N.D. Tex. Aug. 6, 2020)..........11

*Branford Paint Ctr., Inc. v. PPG Architectural Finishes, Inc.,*
    No. 3:06CV907SRU, 2007 WL 329115 (D. Conn. Feb. 1, 2007)..............10

*Caterpillar Inc. v. Lewis,*
    519 U.S. 61 (1996)...................................................................................20

*Channel Bell Assocs. v. W.R. Grace & Co.,*
    No. 91 Civ. 5485 (PKL), 1992 WL 232085 (S.D.N.Y. Aug. 31, 1992) ......13

*Drexel Burnham Lambert Grp., Inc. v. Vigilant Ins. Co.,*
    130 B.R. 405 (S.D.N.Y. 1991)..................................................................29

*Exec. Benefits Ins. Agency v. Arkison,*
    573 U.S. 25 (2014)...................................................................................20

*Fieger v. Pitney Bowes Credit Corp.,*
    251 F.3d 386 (2d Cir. 2001).....................................................................14

*Fried v. Lehman Bros. Real Estate Assocs. III, L.P.,*
    496 B.R. 706 (S.D.N.Y. 2013)............................................................13, 27

*Fuller v. Redding Country Club, Inc.*,
   No. 3:05 CV 1577(CFD), 2006 WL 8446183 (D. Conn. Aug. 31, 2006)
   ................................................................................................................16, 21, 23

*Granfinanciera, S.A. v. Nordberg*,
   492 U.S. 33 (1989)...................................................................................18

*In re AOG Ent., Inc.*,
   569 B.R. 563 (Bankr. S.D.N.Y. 2017).........................................12, 13, 14, 22

*In re Balensweig*,
   410 B.R. 157 (Bankr. S.D.N.Y. 2008)......................................................16

*In re Caires*,
   No. 19-50934 (JAM), 2021 WL 2593848 (Bankr. D. Conn. June 24, 2021) ..............28

*In re Castlerock Props.*,
   781 F.2d 159 (9th Cir. 1986)...................................................................20

*In re Cathedral of the Incarnation*,
   99 F.3d 66 (2d Cir. 1996)........................................................................26

*In re Colbert*,
   117 B.R. 51 (Bankr. D. Conn. 1990) .......................................................15

*In re Enron Corp.*,
   349 B.R. 108 (Bankr. S.D.N.Y. 2006)......................................................19

*In re Fairfield Sentry Ltd. Litig.*,
   458 B.R. 665 (S.D.N.Y. 2011)......................................................13, 15, 16

*In re G.L.A.D. Enters., LLC*,
   No. 19-50604, 2019 WL 5586962 (Bankr. D. Conn. Oct. 28, 2019), *aff'd*, No.
   3:19CV1798 (MPS), 2020 WL 2813071 (D. Conn. May 29, 2020) ....................27, 29

*In re Gen. Am. Commc'ns Corp.*,
   130 B.R. 136 (S.D.N.Y. 1991).................................................................28

*In re Grace Cmty., Inc.*,
   262 B.R. 625 (Bankr. E.D. Pa. 2001) ......................................................11

*In re Granoff*,
   242 B.R. 216 (Bankr. D. Conn. 1999) ......................................................24

*In re Housecraft Indus. USA, Inc.*,
   310 F.3d 64 (2d Cir. 2002)......................................................................15

iii

*In re Midgard Corp.*,
  204 B.R. 764 (B.A.P. 10th Cir. 1997) ........................................................................25

*In re Nat'l E. Corp.*,
  391 B.R. 663 (Bankr. D. Conn. 2008) ...........................................................24, 27, 29

*In re Naugatuck Dairy Ice Cream Co., Inc.*,
  106 B.R. 24 (Bankr. D. Conn. 1989) .........................................................................27

*In re Orion Pictures Corp.*,
  4 F.3d 1095 (2d Cir. 1993) ................................................................................16, 18

*In re Pan Am. Corp.*,
  950 F.2d 839 (2d Cir. 1991) .....................................................................................28

*In re Raytech Corp.*,
  238 B.R. 241 (Bankr. D. Conn. 1999) .......................................................................24

*In re Residential Cap., LLC*,
  519 B.R. 593 (S.D.N.Y. 2014) ..................................................................................19

*In re Southmark Storage Assocs. Ltd. P'ship*,
  132 B.R. 231 (Bankr. D. Conn. 1991) .......................................................................29

*Joseph & Kirschenbaum LLP v. Tenenbaum*,
  No. 19 Civ. 5577, 2020 WL 242374 (S.D.N.Y. Jan. 16, 2020) ................................24

*Lafferty v. Jones*,
  No. AP 22-05019, 2022 WL 3444877 (Bankr. D. Conn. Aug. 15, 2022) ............27, 28

*Langenkamp v. Culp*,
  498 U.S. 42 (1991) ....................................................................................................19

*Liberty Mut. Ins. Co. v. Lone Star Indus., Inc.*,
  313 B.R. 9 (D. Conn. 2004) ......................................................................................11

*Little Rest Twelve, Inc. v. Visan*,
  458 B.R. 44 (S.D.N.Y. 2011) ....................................................................................23

*Lothian Cassidy, LLC v. Lothian Expl. & Dev. II, L.P.*,
  487 B.R. 158 (S.D.N.Y. 2013) ..................................................................................10

*Matter of Dart & Bogue Co., Inc.*,
  52 B.R. 594 (Bankr. D. Conn. 1985) .........................................................................28

*Matter of Windtech, Inc.*,
  80 B.R. 628 (D. Conn. 1987) ....................................................................................29

*MBNA Am. Bank, N.A. v. Hill*,
  436 F.3d 104 (2d Cir. 2006)......................................................................15

*Michaelesco v. Shefts*,
  303 B.R. 249 (D. Conn. 2004) ...................................................................16

*Mt. McKinley Ins. Co. v. Corning Inc.*,
  399 F.3d 436 (2d Cir. 2005)......................................................................21

*N. Pipeline Constr. Co. v. Marathon Pipeline Co.*,
  458 U.S. 50 (1982)..............................................................................17, 18

*Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*,
  639 F.3d 572 (2d Cir. 2011)............................................12, 22, 23, 26

*Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*,
  671 F.3d 261 (2d Cir. 2012)................................................................22, 25

*Renaissance Cosmetics, Inc. v. Dev. Specialists Inc.*,
  277 B.R. 5 (S.D.N.Y. 2002)......................................................................11

*Stern v. Marshall*,
  564 U.S. 462 (2011)..........................................................................14, 19

*Syngenta Crop Prot., Inc. v. Henson*,
  537 U.S. 28 (2002).................................................................................12

**Statutes & Rules**

28 U.S.C. § 157(b)(2)(A) ..............................................................17, 18, 20

28 U.S.C. § 157(b)(2)(B) ..................................................................17, 19

28 U.S.C. § 157(b)(2)(C) ..................................................................17, 19

28 U.S.C. § 157(b)(2)(O)........................................................................20

28 U.S.C. § 157(c)(1)...............................................................................24

28 U.S.C. § 1334(c)(1)..................................................................... passim

28 U.S.C. § 1334(c)(2)..................................................................... passim

28 U.S.C. § 1447(c) .................................................................................13

28 U.S.C. § 1452......................................................................... passim

Connecticut Unfair Trade Practices Act, C.G.S.A. § 42-110b(a).........................2, 7, 8, 15

**Other Authorities**

1 Richard Levin & Henry J. Sommer, Collier Consumer Bankruptcy
Practice Guide ¶ 32.02 (2024) ..................................................................................20

Pursuant to 28 U.S.C. § 1334(c)(2), or in the alternative, pursuant to 28 U.S.C. § 1334(c)(1) and 28 U.S.C. § 1452(b), Plaintiff Yale New Haven Health Services Corporation ("YNHH") respectfully requests that this Court abstain from hearing the instant action and remand it to the Connecticut Superior Court.[1]

## I.    PRELIMINARY STATEMENT

In October 2022, Plaintiff YNHH and Defendant Prospect Medical Holdings, Inc. and certain of its subsidiaries (collectively, "Prospect") executed an Asset Purchase Agreement ("APA") in which YNHH agreed to purchase Prospect's Connecticut hospitals, subject to Prospect's satisfaction of its obligations under the APA. Since signing the APA, Prospect has failed to fulfill even its most basic obligations to the hospitals.  Among other things, Prospect has failed to pay its physician groups, medical staff and vendors, resulting in irretrievably damaged relationships with key partners and diminished services; failed to maintain the physical facilities occupied by the hospitals, resulting in rusty surgical implements and inoperable HVAC systems, elevators and security cameras and lighting; failed to fund its pension plans as required by law, causing the Pension Benefit Guaranty Corporation ("PBGC") to perfect liens upon the hospitals to secure more than $23 million; failed to pay $67 million in provider taxes to the State of Connecticut as of January 2024, resulting in a settlement pursuant to which the Department of Revenue Services took a first-priority lien on the accounts receivable of the Prospect hospitals (the amount of unpaid provider taxes has since grown to well over

---

[1] On January 27, 2025, immediately prior to YNHH filing this motion, Prospect filed a motion to transfer venue to the United States Bankruptcy Court for the Northern District of Texas.  This motion addresses the impropriety of Prospect's removal of the state court litigation and this Court's statutory obligation to abstain and remand this litigation to the Connecticut Superior Court.  YNHH will address Prospect's transfer motion and the arguments therein in a separate responsive filing.

$100 million); and failed to pay tens of millions of dollars in property taxes, resulting in liens in excess of $12 million being perfected by the City of Waterbury. The hospitals' financial performance has also declined precipitously and there has been a material adverse change to the hospitals. The evidence of these failings and others is overwhelming.

As a result of Prospect's egregious mismanagement, in May 2024, YNHH filed a lawsuit in the Connecticut Superior Court seeking a declaratory judgment that Prospect is in breach of the APA and cannot satisfy its closing conditions, and therefore, that YNHH is not obligated to consummate the transaction. Prospect filed a counterclaim against YNHH, asserting breach of contract and alleging that YNHH violated the Connecticut Unfair Trade Practices Act, C.G.S.A. § 42-110b(a). Prospect's counterclaim seeks an order directing YNHH to close the transaction or, in the alternative, money damages for YNHH's alleged breach of the APA. Pursuant to the APA's choice of law and venue provision, the parties contractually agreed that their dispute should be decided in a Connecticut court, applying Connecticut law.

The litigation (the "State Law Contract Action") was assigned to the Superior Court's Complex Litigation Docket and fast-tracked, with trial scheduled for April 2025. Furthermore, since filing, undisputed facts have emerged showing that trial may be unnecessary. Certain of Prospect's misconduct (namely, its failure to make required tax and pension payments, which have resulted in unauthorized liens) clearly and incurably violate straightforward requirements of the APA. On December 23, 2024, YNHH filed for summary judgment on these issues, which would resolve the case in its entirety.

However, 17 days before fact discovery was to close and while YNHH's summary judgment was pending, on January 11, 2025, Prospect filed a voluntary Chapter 11 petition in the U.S. Bankruptcy Court for the Northern District of Texas (the "Texas Bankruptcy Court").[2]  On January 22, 2025, Prospect removed the State Law Contract Action to this Court and now seeks to transfer the case to the Texas Bankruptcy Court.  This Court—indeed, any federal court—must abstain from hearing the State Law Contract Action and remand the action to the Connecticut Superior Court for two independent reasons.

*First*, abstention is mandatory under 28 U.S.C. § 1334(c)(2) because all of the statute's elements are easily satisfied, and the Court is thus required to abstain from hearing the State Law Contract Action.  YNHH's complaint in the State Law Contract Action asserts three causes of action, all for declaratory judgments based on Prospect's contract breaches.  Prospect's counterclaim similarly asserts only state law claims.  The State Law Contract Action raises no question of bankruptcy or other federal law.  Nor is there diversity jurisdiction.  And while the State Law Contract Action is "related to" Prospect's bankruptcy in that it could result in cash proceeds for the estate, it is not a "core" proceeding.  The State Law Contract Action comprises claims and counterclaims brought under Connecticut state law, which all concern pre-petition conduct and whether that conduct violates a pre-petition contract.  It has no impact on creditor status or priorities; it does not seek avoidance or involve any other unique power of bankruptcy trustees.  At most, the State Law Contract Action could potentially augment the bankruptcy estate by directing YNHH to purchase the hospitals for the APA's purchase

---

[2] None of the entities involved in the State Law Contract Action have any connection to Texas.

3

price.  But the law is clear:  state law causes of action that simply augment the estate are not "core" proceedings.  The State Law Contract Action can be timely—indeed, swiftly—adjudicated in the Connecticut Superior Court, the court better positioned to decide issues of Connecticut state law and the court where an April 2025 trial date had already been set.  Because the mandatory abstention elements are satisfied, this Court must abstain from hearing the State Law Contract Action.  (*See infra* Section IV.A.)

*Second*, even if mandatory abstention did not apply (and it does), this Court should abstain from hearing the State Law Contract Action pursuant to the equitable considerations underlying 28 U.S.C. § 1334(c)(1) and 28 U.S.C. § 1452(b). The dispute involves exclusively state law claims, implicates no substantive rights under the Bankruptcy Code and will have no impact on the administration of Prospect's estate. (*See infra* Section IV.BIV.B.)

Accordingly, YNHH respectfully asks this Court to abstain from hearing the State Law Contract Action and remand the action to the Connecticut Superior Court. Consistent with the predominant practice in this Circuit, YNHH also respectfully requests that this Court first address the issues of abstention and remand before addressing Prospect's request to transfer venue to the Texas Bankruptcy Court.

## II.    FACTUAL BACKGROUND

### A.    The Contemplated Transaction.

Plaintiff YNHH is a leading not-for-profit healthcare system in Connecticut that provides comprehensive, integrated and family-focused care in more than 100 medical specialties.  YNHH consists of five hospitals—Yale New Haven, Bridgeport, Greenwich, Lawrence + Memorial and Westerly (in Rhode Island)—and Northeast Medical Group, a physician foundation of primary care and medical specialists.

It is also affiliated with preeminent Connecticut institutions, Yale University and Yale School of Medicine, and has been operating in the state of Connecticut for almost 200 years. Defendant Prospect is a network of private, for-profit affiliated companies that operate hospital systems, primarily in California and the Northeast United States.[3]

In 2021, YNHH and Prospect began discussions for YNHH to acquire Prospect's three Connecticut-based hospitals—Waterbury Hospital, Manchester Memorial Hospital and Rockville General Hospital and their affiliated entities (the "Businesses"). On February 4, 2022, the parties signed a non-binding Letter of Intent for YNHH to acquire substantially all of the assets of the Businesses (the "Contemplated Transaction"). On October 5, 2022, the parties entered into the APA, pursuant to which YNHH agreed to acquire the Businesses for a base price of $435 million, subject to various adjustments at closing, and subject to Prospect satisfying certain closing conditions.

**B.    Since Signing, Prospect Has Repeatedly Violated the APA.**

Prospect has failed to uphold its obligations under the APA and has not satisfied—and cannot ever satisfy—the conditions precedent to YNHH's obligation to close the Contemplated Transaction. Prospect has failed to comply with required closing conditions, both by breaching representations required for closing and also by breaching

---

[3] Defendants also include affiliated entities: Prospect CT, Inc., Prospect ECHN, Inc. d/b/a Eastern Connecticut Health Network, Prospect Rockville Hospital, Inc. d/b/a The Rockville General Hospital, Prospect Manchester Hospital, Inc. d/b/a The Manchester Memorial Hospital, Prospect Waterbury, Inc. d/b/a The Waterbury Hospital, Prospect CT Medical Foundation, Inc. d/b/a Eastern CT Medical Professionals and Alliance Medical Group, Prospect ECHN Home Health, Inc. d/b/a Visiting Nurse and Health Services of Connecticut, Cardiology Associates of Greater Waterbury, LLC, Prospect CT Management Services, Inc. d/b/a Medical Practice Partners, Healthcare Staffing On Demand, LLC, Prospect Waterbury Ambulatory Surgery, LLC and Prospect Waterbury Home Health, Inc. d/b/a VNA Health at Home.

interim covenants that prescribe how Prospect must operate the Businesses between the time of signing and closing.  The result has been catastrophic for the hospitals.  Since signing the APA, the Businesses' financial performance has collapsed and Prospect has failed to pay its physician groups, medical staff and vendors, failed to maintain the physical facilities occupied by the hospitals, failed to fund its pension plans as required by law, failed to make required rent and tax contributions, failed to comply with regulatory requirements, failed to provide essential medical services and failed to safeguard patients' protected health information.  (*Yale New Haven Health Servs. Corp. v. Prospect Med. Holdings, Inc.*, No. (X07) HHD-CV24-61894328-S ("Connecticut Action"), Dkt. No. 166.00, Second Am. Compl. ("SAC") ¶¶ 7-13.)  In addition, although the APA specifically requires Prospect to keep the Businesses free and clear of liens, the hospitals are now encumbered by municipal and PBGC liens in excess of $35 million.  (Connecticut Action Dkt. No. 190.00, Pl.'s Mot. for Summ. J. at 22.)  More simply, Prospect has failed to operate the Businesses in the ordinary course, the Businesses have sustained a material adverse change and Prospect has incurably and indisputably breached the APA, relieving YNHH of its obligation to close the Contemplated Transaction.

The APA contains a choice of law and forum selection clause intended to govern disputes arising from the agreement.  Section 10.3 specifies that "the venue of all disputes, claims, and lawsuits arising hereunder shall lie in the state and federal courts located in the State of Connecticut".  (*See* Connecticut Action Dkt. No. 166.00, SAC at ¶ 32, (citing APA § 10.3 ("Choice of Law; Venue").)  The APA further provides that "[a]ll Actions (in contract or tort) arising out of or relating to this Agreement . . . shall be

governed by and construed in accordance with the laws of the State of Connecticut".
(*Id.*)

> ### C.    YNHH Brings This Action Asserting State Law Contract Claims.

On May 3, 2024, YNHH filed a complaint against Prospect in the Superior

Court of Connecticut asserting claims that Defendants breached—and cannot ever

satisfy—the APA's required closing conditions and other obligations under the APA and

seeking a declaratory judgment that YNHH is not required to close the Contemplated

Transaction.  (Connecticut Action, Dkt. No. 100.31, Compl. ¶¶ 163-182, Prayer for

Relief ¶¶ 1-6.)  The operative complaint is YNHH's Second Amended Complaint.

(Connecticut Action Dkt. No. 166.00.)

YNHH seeks declaratory judgments that (1) numerous representations and

warranties made by Prospect, which under APA Section 6.1(a) are required to be "true,

correct and complete in all respects" both at signing and closing, were untrue at signing

and/or will be untrue as of any closing date, including a representation that there has been

no material adverse change to the Businesses (*id.* at ¶¶ 186-192); (2) additional

representations that Prospect must make at closing pursuant to APA Section 6.1(b)—the

Seller Fundamental Representations and Seller Compliance Representations—are not and

will never be true and correct in all material respects (*id.* at ¶¶ 193-201); and (3) Prospect

has failed to comply with several operating and negative covenants—including the

covenant to operate the Businesses in the ordinary course—which are required for closing

under APA Section 6.1(c) (*id.* at ¶¶ 202-208), each of which alone relieves YNHH of its

obligation to close the Contemplated Transaction.

On July 10, 2024, Prospect filed a counterclaim against YNHH asserting

that YNHH violated the APA and the Connecticut Unfair Trade Practices Act (C.G.S.A.

§ 42-110b(a)) and seeking to compel YNHH to complete the Contemplated Transaction or, in the alternative, money damages. (Connecticut Action Dkt. No. 115.00, Defs.' Counterclaim, ¶¶ 121-153, Prayer for Relief ¶¶ 1-6.) The operative counterclaim is the Third Amended Counterclaim. (Connecticut Action Dkt. No. 179.00, Defs.' Third Am. Counterclaim.) Prospect asserts that YNHH breached the APA by failing to close the Contemplated Transaction and failing to use best efforts to close the Contemplated Transaction. (*Id.* at ¶¶ 113-122.) Prospect also asserts that YNHH breached the APA's implied covenant of good faith and fair dealing and violated the Connecticut Unfair Trade Practices Act by misrepresenting to Prospect its intentions to close the Contemplated Transaction. (*Id.* at ¶¶ 131-135.)

On December 23, 2024, YNHH filed a motion for summary judgment alleging that Prospect's indisputable failure to make required tax and pension payments gives rise to incurable violations of straightforward closing conditions of the APA, which would resolve the case in its entirety. (Connecticut Action Dkt. No. 190.00, Pl.'s Mot. for Summ. J.)

**D.    After More Than Seven Months of Litigation—Including YNHH Filing for Summary Judgment—and Days Prior to the Close of Fact Discovery, Prospect Files for Bankruptcy and Removes This Case.**

Shortly after YNHH filed its complaint in the Superior Court, Prospect filed an application for a prejudgment remedy to secure the purchase price set by the APA. Prospect's application for a prejudgment remedy was mooted upon YNHH's agreement to set aside "sufficient funds for the closing of the transaction", in the event such closing was ordered. (*See* Stipulation at 2, *Prospect Med. Holdings, Inc. v. Yale New Haven Health Servs. Corp.*, No. HHD-CV-24-5083574-S (July 5, 2024), Dkt. No. 111.00.). Prospect thereafter filed its counterclaims in YNHH's first-filed case. The

suit was assigned to the Complex Litigation Docket on June 14, 2024.  (Connecticut Action Dkt. No. 104.86.)  The Complex Litigation Docket is a specialized docket reserved for "challenging" cases that often "involve multiple litigants, legally intricate issues or claims for damages that could total millions of dollars".  (CONN. JUD. BRANCH, FACTS ABOUT THE CONNECTICUT JUDICIAL BRANCH COMPLEX LITIGATION DOCKET 1 (2017).)  Because the Docket's cases tend to be particularly difficult and involved, "an individual judge . . . preside[s] over all aspects of the litigation, including trial".  (*See id.*) Prior to removal, the State Law Contract Action was before Judge Elizabeth J. Stewart on the Complex Litigation Docket and the Court had ordered the case to be placed on a highly expedited schedule.

The litigation has progressed considerably since filing.  Prospect filed for bankruptcy just days prior to the close of fact discovery, after YNHH had already filed its motion for summary judgment and trial had already been set for April 22, 2025.  Prior to Prospect's bankruptcy filing, the parties had produced over 1.1 million pages of discovery; sought discovery from 25 third party witnesses; and engaged in extensive depositions, including depositions of key YNHH witnesses (*e.g.,* YNHH's CEO, CLO and CFO), key Prospect witnesses (*e.g.*, a hospital COO, a hospital Executive Director & SVP and a hospital VP) and additional third party witnesses.  Judge Stewart decided motions relating to the pleadings, adjudicated discovery disputes and granted YNHH leave to file a motion for summary judgment.  YNHH filed its motion for summary judgment on December 23, 2024, which addresses Prospect's discrete, incurable violations of straightforward closing conditions of the APA, and would resolve the case in its entirety.  Judge Stewart set an expedited briefing schedule, directing Prospect to

submit its opposition by January 29, 2025, YNHH to file its reply by February 7, 2025,

and scheduled oral argument on the summary judgment motion for February 11, 2025.

On January 11, 2025, Prospect filed its Chapter 11 petition.  The filing

Debtors included all of the defendants in the State Law Contract Action.  (Voluntary

Petition for Non-Individuals Filing for Bankruptcy, *In re Prospect Med. Holdings, Inc.*,

No. 25-80002-SGJ11 (Bankr. N.D. Tex. Jan. 11, 2025), ECF No. 1.)  On January 22,

2025, Prospect filed a notice of removal in this Court pursuant to 28 U.S.C. § 1452, and

requested that this Court transfer the State Law Contract Action to the Northern District

of Texas.  (Notice of Removal, ECF No. 1.)  On January 28, YNHH filed this Motion for

Abstention and Equitable Remand (the "Motion").

## III.    THRESHOLD ISSUE

### A.    This Court Should Rule on YNHH's Motion for Abstention and Equitable Remand Before Considering Prospect's Request to Transfer Venue.

Prospect's notice of removal requests that "the District Court transfer the

Action to the United States Bankruptcy Court for the Northern District of Texas".  (*Id.* at

2.)  As a threshold matter, this Court should rule on YNHH's Motion for Abstention and

Equitable Remand before considering Prospect's request to transfer venue.

Courts in this Circuit have consistently held that, "[w]hen presented with

competing motions to remand a case and to transfer venue, a court is to consider the

remand motion *first*, and then address the motion to transfer venue only if it first denies

the motion to remand".  *Lothian Cassidy, LLC v. Lothian Expl. & Dev. II, L.P.*, 487 B.R.

158, 161 (S.D.N.Y. 2013) (emphasis added); *see also Branford Paint Ctr., Inc. v. PPG*

*Architectural Finishes, Inc.*, No. 3:06CV907SRU, 2007 WL 329115, at *1 (D. Conn.

Feb. 1, 2007) (deciding motion to remand on jurisdictional grounds before considering

motion to transfer); *Liberty Mut. Ins. Co. v. Lone Star Indus., Inc.*, 313 B.R. 9, 14 (D. Conn. 2004) (deciding that remand was statutorily required and therefore "there [was] no reason to address [the debtor's] Motion to Transfer Venue"); *Renaissance Cosmetics, Inc. v. Dev. Specialists Inc.*, 277 B.R. 5, 11 (S.D.N.Y. 2002) (noting that "courts faced with cross-motions for remand and change of venue consider the remand motion first and, if remand is denied, turn to the motion for change of venue", and collecting cases).

That approach is in accord with core judicial principles and the statutory text. "Jurisdiction is always a threshold issue", and therefore courts should "determine first if an action has been properly removed and if the court has subject matter jurisdiction". *In re Grace Cmty., Inc.*, 262 B.R. 625, 628-29 (Bankr. E.D. Pa. 2001). Furthermore, the removal statute upon which Prospect relies, 28 U.S.C. § 1452, specifically provides that removal shall be in "the district court for the district *where [the] civil action is pending*"—not the district where the bankruptcy is proceeding. (emphasis added). That language would effectively be read out of the statute if courts transferred venue before deciding fundamental jurisdictional questions. *See Boy Scouts of Am. v. Hartford Accident & Indem. Co.*, No. 3:19-CV-1318-B, 2020 WL 4530370, at *8 (N.D. Tex. Aug. 6, 2020) (explaining that "the statutory scheme requires the court to which a case is removed to decide whether to remand the case before deciding whether to transfer venue to the home bankruptcy court").

Finally, because abstention is mandatory and equitable remand is proper in this case, transfer would "only cause further delay or result in a waste of judicial resources". *In re Grace Cmty., Inc.*, 262 B.R. at 629. Transfer of the State Law Contract Action to the Texas Bankruptcy Court would simply delay the inevitable abstention that

is *required* of any federal court under section 1334(c)(2).  And even if the Court finds

abstention is not mandatory, this Court should adhere to the consistent holdings of other

courts in this Circuit and rule on YNHH's request for permissive abstention and equitable

remand prior to ruling on the transfer request, for the convenience of the parties and the

Court, and to serve the interests of judicial efficiency.

## IV.    ARGUMENT

### A.    This Court Must Abstain Pursuant to Section 1334(c)(2).

This Court must abstain in this case because abstention is required by

statute.  Section 1334(c)(2) articulates the circumstances under which a district court or

bankruptcy court must abstain from adjudicating a proceeding:

> Upon timely motion of a party in a proceeding based upon a State law claim
> or State law cause of action, related to a case under title 11 but not arising
> under title 11 or arising in a case under title 11, with respect to which an
> action could not have been commenced in a court of the United States absent
> jurisdiction under this section, the district court ***shall abstain*** from hearing
> such proceeding if an action is commenced, and can be timely adjudicated,
> in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2) (emphasis added).

This Court's removal jurisdiction must be "strictly construed".  *Syngenta*

*Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002).  Because mandatory abstention's core

purpose is to afford deference to state courts—and because principles of comity presume

that state courts should decide matters of state law—the Second Circuit has suggested

that the burden of proof lies on the party opposing remand to show why abstention is

improper.  *Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 582 (2d Cir.

2011) ("*Parmalat I*"); *see In re AOG Ent., Inc.*, 569 B.R. 563, 573 (Bankr. S.D.N.Y.

2017) (citing *Parmalat I* and holding that party opposing mandatory abstention bears

burden of proof); *BGC Partners, Inc. v. Avison Young (Can.), Inc.*, 919 F. Supp. 2d 310,

12

319 n.66 (S.D.N.Y. 2013) (same); *see also Fried v. Lehman Bros. Real Estate Assocs. III, L.P.*, 496 B.R. 706, 711 (S.D.N.Y. 2013) (noting *Parmalat I*'s "caution" to district courts "about applying the usual presumption that the movant carries the burden"); *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 690 (S.D.N.Y. 2011) (similar). Prospect cannot meet its burden here.

Courts must abstain from hearing an action when: (1) the motion to abstain is timely; (2) the action is based on a state law claim; (3) the action is "related to" but not "arising under" the Bankruptcy Code or "arising in" a bankruptcy case; (4) section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; and (6) the action can be "timely adjudicated" in state court. *In re AOG Ent., Inc.*, 569 B.R. at 572. Each of the mandatory abstention elements is easily satisfied here, and the Court is thus required to abstain from hearing the State Law Contract Action.

   i. <u>The Motion to Abstain Is Timely.</u>

Courts typically apply "a flexible, case-specific approach" in determining whether a motion for mandatory abstention is timely. *Channel Bell Assocs. v. W.R. Grace & Co.*, No. 91 Civ. 5485 (PKL), 1992 WL 232085, at *5 (S.D.N.Y. Aug. 31, 1992) (plaintiffs' motion for mandatory abstention in response to defendants' transfer motion and shortly after removal from state court was timely). Here, the Motion is timely because YNHH filed it six days after the removal of the State Law Contract Action to this Court (well within 30 days after removal as required by 28 U.S.C. § 1447(c)) and before any pleadings were filed (other than those already filed with the state court) or hearings were held in front of this Court. Thus, the timing of the Motion has "not caused any waste of judicial resources or discernible prejudice" to Prospect. *Id.*

ii.    The State Law Contract Action Asserts Only State Law Claims.

Each claim or cause of action asserted by YNHH in its State Law Contract Action seeks declaratory relief and is based solely on allegations that Prospect has breached and cannot fulfill the requirements of the contract governing the Contemplated Transaction, which is governed by Connecticut state law.  (Connecticut Action Dkt. No. 166.00, SAC at ¶¶ 186-208.)  Similarly, each claim or cause of action asserted by Prospect in its counterclaim alleges either breach of contract or a Connecticut statutory violation.  (Connecticut Action Dkt. No. 179.00, Defs' Third Am. Answer and Counterclaim at ¶¶ 113-142.)  Both parties' contract-related claims are to be decided under Connecticut state law, (*see* Connecticut Action Dkt. No. 166.00, SAC at ¶ 32, (citing APA § 10.3 ("Choice of Law")); *see Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001)), and Prospect's statutory claim implicates only Connecticut state law.  Thus, the removed claims are all state law contract or state law statutory claims that do not implicate any federal law.

iii.    The State Law Contract Action Does Not "Arise Under" the Bankruptcy Code or "Arise In" a Bankruptcy Case.

Courts determining whether an action "arises under" title 11 or "arises in" a bankruptcy case look to whether the action is "core" to the bankruptcy proceeding.  *See In re AOG Ent., Inc.*, 569 B.R. at 573.  As the Supreme Court has explained, "core proceedings are those that arise in a bankruptcy case or under Title 11".  *Stern v. Marshall,* 564 U.S. 462, 476 (2011).  The State Law Contract Action is plainly not a core proceeding.  It is a pre-petition common law action that existed prior to the Chapter 11 case and seeks relief wholly separate from title 11—a declaratory judgment that YNHH is not required to close the Contemplated Transaction under the Connecticut state law-

14

governed APA. It does not concern the administration of the estate, affect the adjustment

of the debtor-creditor relationship, or involve a proof of claim filed by YNHH. It existed

(and was preparing to go to trial) well before, and completely separate and apart from,

Prospect's recent bankruptcy filing. As such, this proceeding is a textbook example of a

non-core proceeding that neither "arises under" title 11 nor "arises in" a bankruptcy case.

More specifically, cases "arise under" title 11 "when the cause of action or

substantive right claimed is created by the Bankruptcy Code". *In re Fairfield Sentry Ltd.*

*Litig.*, 458 B.R. at 674 (citing *MBNA Am. Bank, N.A. v. Hill,* 436 F.3d 104, 108-09

(2d Cir. 2006) and *In re Housecraft Indus. USA, Inc.,* 310 F.3d 64, 70 (2d Cir. 2002)).

The State Law Contract Action plainly does not "arise under" title 11. The causes of

action asserted by YNHH—that Prospect has breached APA covenants and cannot satisfy

the APA's closing conditions—are rooted in common law state contract law, and exist

wholly separate and apart from the federal Bankruptcy Code. Similarly, the causes of

action asserted by Prospect in its counterclaim—that YNHH breached the APA and

violated the Connecticut Unfair Trade Practices Act—are common law breach of contract

and state statutory claims. The Bankruptcy Code provides no cause of action for contract

breach or state statutory violation. Furthermore, the purported rights that are

implicated—contractual rights under the APA and Prospect's right to fair trade practices

under the Connecticut Unfair Trade Practices Act—are not rights created by title 11.

These are rights that exist solely as matters of state law.

Cases "arise in" a title 11 proceeding if the claims "would not exist but for

the bankruptcy case". *In re Colbert*, 117 B.R. 51, 53 (Bankr. D. Conn. 1990); *see also*

*Baker v. Simpson,* 613 F.3d 346, 351 (2d Cir. 2010) (per curiam) (explaining that cases

15

arise in title 11 if they "are not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy" (quotation omitted)). Again, this is plainly not the case here. The rights asserted by YNHH and Prospect existed prior to Prospect's commencement of the Chapter 11 case. The State Law Contract Action was commenced by YNHH more than seven months before Prospect filed for bankruptcy and removed this case. Furthermore, the State Law Contract Action could have proceeded, and indeed was proceeding to an April 2025 trial, in the Connecticut Superior Court, thus showing that the Action could exist even without the bankruptcy case.

Indeed, courts have consistently held that pre-petition contract claims where no proof of claim has been filed by the opposing litigant are "non-core proceedings" that do not "arise in" a title 11 proceeding. *See e.g., In re Orion Pictures Corp.*, 4 F.3d 1095, 1102 (2d Cir. 1993) (explaining that "breach-of-contract action by a debtor against a party to a pre-petition contract, who has filed no claim with the bankruptcy court, is non-core"); *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. at 684 (finding that where the facts in dispute relate to pre-petition events and pre-petition contracts, the claims are "non-core"); *In re Balensweig*, 410 B.R. 157, 162-63 (Bankr. S.D.N.Y. 2008) (holding that contract and tort claims wholly based on pre-petition events are non-core even though they accrue to the benefit of the estate); *Fuller v. Redding Country Club, Inc.*, No. 3:05 CV 1577(CFD), 2006 WL 8446183, at *3 (D. Conn. Aug. 31, 2006) (finding that pre-petition breach of contract, breach of corporate bylaws, libel and tort claims are "non-core"); *Michaelesco v. Shefts*, 303 B.R. 249, 252 (D. Conn. 2004) ("[P]re-bankruptcy petition breach of contract actions may never be considered

core claims".); *Beard v. Braunstein,* 914 F.2d 434, 443 (3d Cir. 1990) ("It is clear that to

the extent that the claim is for pre-petition contract damages, it is non-core."); *see also N.*

*Pipeline Constr. Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 84 (1982) (holding that state

law breach-of-contract actions based on a pre-petition contract cannot be finally

determined by a bankruptcy court, even if brought by debtor during Chapter 11

reorganization proceeding).

Prospect's argument that it can fall back on 28 U.S.C. §§ 157(b)(2)(A),

(B), and (C)—three of the categories of exemplary "core proceedings" listed in the

Judicial Code—lacks merit. (Notice of Removal, ECF No. 1, at 4-5.) Prospect argues

that the State Law Contract Action is a "core" proceeding because it is a matter

"concerning the administration of the estate" under section 157(b)(2)(A), involves an

"allowance or disallowance of claims against the estate" under section 157(b)(2)(B) and

involves "counterclaims by the estate against persons filing claims against the estate"

under section 157(b)(2)(C). (*Id.*) The supporting evidence that Prospect provides in its

Notice of Removal is that "Defendants have asserted counterclaims [that] . . . could

accrue an additional $435 million . . . for the benefit of the bankruptcy estates.

Conversely, if Plaintiff prevails, Plaintiff may obtain a large unsecured claim". (*Id.* at 5.)

These arguments are unavailing.

*First*, Prospect cannot rely on 28 U.S.C. § 157(b)(2)(A) because the State

Law Contract Action is not a matter "concerning the administration of the estate" under

that section. The State Law Contract Action seeks only a declaratory judgment under

state law causes of action. The fact that the outcome of the State Law Contract Action

could accrue to the benefit of the estate does not mean that it is a matter "concerning the

17

administration of the estate" under section 157(b)(2)(A). The Supreme Court and this Circuit have held that where the outcome of a dispute would only modify the assets of the estate, the effect on the administration of the estate is insufficient to render proceedings core. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 56 (1989) (holding that common law actions to augment the size of the estate are not core as opposed to actions to prioritize claims against the estate, which are); *N. Pipeline Constr. Co.*, 458 U.S. at 71-72 (holding that state law contract actions to augment the size of the estate should be distinguished from "core" bankruptcy proceedings to restructure debtor-creditor relationships); *In re Orion Pictures Corp.*, 4 F.3d at 1102 (rejecting both the notions that (a) because an action could inure to the benefit of the debtor's estate it "thus 'concern[s]' its 'administration'" and (b) an action is core "because the amounts allegedly due would inure to the benefit of the estate").

Furthermore, the State Law Contract Action does not affect any creditor's rights in a proceeding under title 11. YNHH is not seeking money damages but is rather only seeking a declaratory judgment that Prospect has failed to satisfy the required closing conditions under the APA. Prospect's argument to the contrary—that YNHH will obtain a large unsecured claim against Prospect's estate if YNHH prevails—is groundless. To be clear: YNHH will not become an unsecured creditor if it prevails; it simply will not be required to complete the Contemplated Transaction. Thus, the determination of the dispute will not alter the prioritization of creditors or impact any other creditor's rights. *See N. Pipeline Constr. Co.*, 458 U.S. at 71 ("[T]he restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be

distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is at issue in this case.").

      *Second*, Prospect cannot rely on 28 U.S.C. §§ 157(b)(2)(B) and (C) because the State Law Contract Action is not a "claim[] against the estate" under these categories.  Prospect argues that the State Law Contract Action involves an "allowance or disallowance of claims against the estate" under section 157(b)(2)(B) and "counterclaims by the estate against persons filing claims against the estate" under section 157(b)(2)(C). (Notice of Removal, ECF No. 1, at 4-5).  However, the "claims" referenced in both of these provisions refer to a ***proof of claim*** filed against the estate in the bankruptcy proceeding.  *See In re Enron Corp.*, 349 B.R. 108, 112-13 (Bankr. S.D.N.Y. 2006) (citing *Langenkamp v. Culp,* 498 U.S. 42, 44 (1991) and finding that the filing of a proof of claim triggers the allowance and disallowance of claims process under 28 U.S.C. § 157(b)(2)(B) and distinguishing from *Orion*, where no proof of claim was filed); *In re Residential Cap., LLC*, 519 B.R. 593, 601-02, 602 n.4 (S.D.N.Y. 2014) (concluding that 28 U.S.C. § 157(b)(2)(C) is inapplicable absent proof of claim).  YNHH has not filed any proof of claim, or any other claim in the bankruptcy proceeding.  Thus, sections 157(b)(2)(B) and (C) are plainly inapplicable.

      Moreover, the U.S. Supreme Court has explained that state law actions that are independent of the bankruptcy—*i.e.*, proceedings that do not arise in a bankruptcy case or arise under title 11—are non-core, even if they arguably fit into one of the categories enumerated in section 157(b)(2).  *See Stern*, 564 U.S. at 487 (holding that a state law action independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the proof of claim filed by the defendant cannot be constitutionally heard

and finally determined by a bankruptcy judge, even if it falls within the scope of section 157(b)(2)); *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 34 (2014) (clarifying *Stern* and holding that such proceedings that may not constitutionally be heard and finally determined by a bankruptcy court are "non-core"); 1 RICHARD LEVIN & HENRY J. SOMMER, COLLIER CONSUMER BANKRUPTCY PRACTICE GUIDE ¶ 32.02 (2024) ("[A] proceeding classified as core by the statute but not constitutionally subject to entry of a final judgment by the bankruptcy court should be considered to be a non-core proceeding and thus subject to the procedures for such proceedings."); *see also In re Castlerock Props.*, 781 F.2d 159, 162 (9th Cir. 1986) (explaining that otherwise non-core "state law contract claims" do not become core merely because they "arguably fit within the literal wording of the two catch-all provisions, sections § 157(b)(2)(A) and (O)", and to hold otherwise would be unconstitutional).  If a proceeding deals only with private rights that have their source in state law and that are entirely independent of the bankruptcy—which is indisputably the situation here—it cannot, as a constitutional matter, be heard and finally determined by a non-Article III court and cannot be "core".

         iv.    <u>Section 1334 Is the Sole Basis For Federal Jurisdiction.</u>

        The State Law Contract Action presents no question of federal law—the only causes of action alleged by YNHH are based in state law breach of contract and the only causes of action alleged by Prospect are for state law breach of contract and violation of a Connecticut statute.  (Connecticut Action Dkt. No. 166.00, SAC ¶¶ 186-208; Connecticut Action Dkt. No. 179.00, Defs.' Third Am. Answer and Counterclaim ¶¶ 113-142.)  Moreover, diversity jurisdiction does not exist because the citizenship of YNHH is not diverse from the citizenship of certain of the Defendants.  *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (the general-diversity statute applies "only to cases

in which the citizenship of each plaintiff is diverse from the citizenship of each

defendant"). Plaintiff YNHH is a not-for-profit healthcare organization organized under

the laws of the State of Connecticut, with its principal place of business in Connecticut.

(Connecticut Action Dkt. No. 166.00, SAC ¶ 18.)  Eleven of the thirteen Defendants are

also citizens of Connecticut.[4]

      v.      <u>The Action Was Commenced in State Court.</u>

      The State Law Contract Action was originally commenced in State Court,

and therefore, this element is easily satisfied.  *See Mt. McKinley Ins. Co. v. Corning Inc.*,

399 F.3d 436, 446 (2d Cir. 2005) (explaining that even removed cases are rightly said to

have "commenced" in state court for purposes of section 1334); *Fuller*, 2006 WL

8446183, at *3.

      vi.     <u>The State Law Contract Action Can Be Timely Adjudicated in<br>State Court.</u>

      Abstention also is required because the State Law Contract Action "can be

timely adjudicated" in Connecticut state court.  *See* 28 U.S.C. § 1334(c)(2).  The State

Law Contract Action is progressing in the Connecticut Superior Court's Complex

Litigation Docket on an expedited track and was already set for trial in April 2025.  (*See*

---

[4] Defendant Prospect ECHN, Inc. is a Connecticut stock corporation with its principal place of business in Connecticut; Defendant Prospect Rockville Hospital, Inc. is a Connecticut stock corporation with its principal place of business in Connecticut; Defendant Prospect Manchester Hospital, Inc. is a Connecticut stock corporation with its principal place of business in Connecticut; Defendant Prospect Waterbury, Inc. is a Connecticut stock corporation with its principal place of business in Connecticut; Defendant Prospect CT Medical Foundation, Inc. is a Connecticut corporation; Defendant Prospect ECHN Home Health, Inc is a Connecticut corporation; Defendant Cardiology Associates of Greater Waterbury, LLC is a Connecticut limited liability company with its principal place of business in Connecticut; Defendant Prospect CT Management Services, Inc. is a Connecticut stock corporation; Defendant Healthcare Staffing On Demand, LLC is a Connecticut limited liability company; Defendant Prospect Waterbury Ambulatory Surgery, LLC is a Connecticut limited liability company with its principal place of business in Connecticut; Defendant Prospect Waterbury Home Health, Inc. is a Connecticut limited liability company with its principal place of business in Connecticut.  (Connecticut Action Dkt. No. 166.00, SAC at ¶¶ 21-31; Connecticut Action Dkt. No. 179.00, Defs.' Third Am. Answer ¶¶ 21-31.)

Connecticut Action Dkt. No. 182.00, Joint Mot. To Modify Scheduling Order at 2-3;

Connecticut Action Dkt. No. 182.86 (Order granting 182.00).)  With respect to the

statute's "timely adjudication" element, courts consider four factors:

> (1) the backlog of the state court's calendar relative to the federal court's
> calendar; (2) the complexity of the issues presented and the respective
> expertise of each forum; (3) the status of the title 11 bankruptcy proceeding
> to which the state law claims are related; and (4) whether the state court
> proceeding would prolong the administration or liquidation of the estate.

*Parmalat I*, 639 F.3d at 580.

The first factor requires courts to analyze whether proceeding in state

court would be significantly slower than litigating in federal court.  *See id.*  With respect

to this factor, a heavier state court backlog carries little weight where the "difference in

timing appears to be a matter of months, rather than years."  *Parmalat Cap. Fin. Ltd. v.

Bank of Am. Corp.*, 671 F.3d 261, 267 (2d Cir. 2012) (*Parmalat II*).  Furthermore, "the

[timely adjudication] inquiry does not turn exclusively on whether an action could be

adjudicated most quickly in state court."  *Parmalat I*, 639 F.3d at 580.  Hence, in

complex cases, the second factor provides that adjudication is preferred in "the forum

with the most expertise in the relevant areas of law" and "greater familiarity with the

record".  *Id.* at 580-81.

Many courts in this Circuit do not address the third or fourth factors if the

first two factors do not indicate a significant difference between the timeliness of the state

and federal fora.  *See, e.g.*, *In re AOG Ent., Inc.* 569 B.R. at 584 (abstaining after first two

factors showed no meaningful difference in timeliness); *Allstate Ins. Co. v. Credit Suisse

Sec. (USA) LLC*, No. 11 Civ. 2232, 2011 WL 4965150, at *8 (S.D.N.Y. Oct. 19, 2011)

(same).  Where relevant, these two final factors turn on whether the nature of the debtor's

bankruptcy necessitates particularly swift resolution of the state law claims and, relatedly,

whether any delay in adjudication would "unduly prolong the administration of the estate". *Parmalat I*, 639 F.3d at 581.

   Here, each factor weighs in favor of abstention. First and foremost, there is no indication that proceeding in state court would delay the resolution of this matter. Quite the opposite—at this point in the case, abstention and remand would be far more expedient than litigation in an alternative forum. This Action has been assigned to the Connecticut Superior Court's Complex Litigation Docket on an expedited track, and, prior to the case being automatically stayed by virtue of Prospect's bankruptcy filing on January 11, 2025, was only seventeen days from the end of fact discovery, with a two-week trial scheduled to commence on April 22, 2025. (*See* Connecticut Action Dkt. No. 182.00, Joint Mot. To Modify Scheduling Order at 2-3; Connecticut Action Dkt. No. 182.86 (Order granting 182.00).) Judge Stewart has presided over the case for months, heard motions on the pleadings, adjudicated discovery disputes and—prior to Prospect's bankruptcy filing—was considering YNHH's motion for summary judgment filed on December 23, 2024. (*See* Connecticut Action Dkt. No. 190.00, Pl.'s Mot. for Summ. J.) In no analogous case has a court in this Circuit found timely adjudication infeasible. Indeed, the great weight of case law is directly to the contrary. *See, e.g.*, *Fuller*, 2006 WL 8446183, at *3 ("There is no indication that the case would not be resolved in a timely manner by the Connecticut Superior Court. Indeed, before the case was removed to this Court, the state court had scheduled this case for trial."); *Little Rest Twelve, Inc. v. Visan*, 458 B.R. 44, 59 (S.D.N.Y. 2011) ("[I]t is evident that the cases are far along in state court, and Justice Fried was about to decide important issues when Visan was removed. Given Justice Fried's expertise, the cases would be litigated in a

very timely manner in state court."); *Allied Mech. & Plumbing Corp. v. Dynamic Hostels Hous. Dev. Fund Co.*, 62 B.R. 873, 878 (Bankr. S.D.N.Y. 1986) (granting abstention motion because "it appears that discovery proceedings are continuing, the state court has rendered decisions on motions and the case is actively proceeding towards a trial"); *see also In re Granoff*, 242 B.R. 216, 220 (Bankr. D. Conn. 1999) (noting that assignment "to the complex litigation docket" indicated that the Connecticut Superior Court had "more judicial resources available to it than this Court" and would decide the dispute "on a timely basis"); *In re Raytech Corp.*, 238 B.R. 241, 244 (Bankr. D. Conn. 1999) (finding state court adjudication within two-year period to be "timely").

The timeliness advantage of state court litigation is even more pronounced because the Superior Court may enter a final judgment with respect to the parties' claims but an order by a bankruptcy court would remain subject to district court approval. Although "[a] bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11", any "final order or judgment" in such a proceeding must be entered by the district court following *de novo* review, unless the parties otherwise consent. 28 U.S.C. § 157(c)(1). Because Prospect seeks transfer to the Texas Bankruptcy Court, failure to abstain would mean that the parties would likely "hav[e] to relitigate before the district court matters already heard by the bankruptcy court". *In re Nat'l E. Corp.*, 391 B.R. 663, 670 (Bankr. D. Conn. 2008); *Joseph & Kirschenbaum LLP v. Tenenbaum*, No. 19 Civ. 5577, 2020 WL 242374, at *5 (S.D.N.Y. Jan. 16, 2020) ("[I]n non-core proceedings, bankruptcy courts can only issue proposed findings of fact and law; they cannot issue a final decision, delaying any potential

resolution."); *In re Midgard Corp.*, 204 B.R. 764, 778 n.17 (B.A.P. 10th Cir. 1997)

("This two-tier review may favor a finding of timely adjudication in a state court.").

        The second factor only strengthens the case for abstention. In proceedings

involving complex issues of law or fact, the Second Circuit has explained that the law

favors adjudication in the forum with greater expertise in the relevant areas. *See*

*Parmalat II*, 671 F.3d at 267-68 (remanding in order to "allow the state courts of Illinois

to speak directly on these issues of state law"). Here, all considerations count in favor of

state court adjudication. The parties are litigating "dense and complex" provisions of a

multi-million dollar M&A contract. *See Akorn, Inc. v. Fresenius Kabi AG*, No. CV 2018-

0300-JTL, 2018 WL 4719347, at *44 (Del. Ch. Oct. 1, 2018), *aff'd*, 198 A.3d 724 (Del.

2018) (describing analogous provisions). Upon filing, the matter was referred to the

specialized docket reserved for "some of the most challenging civil cases" before the

Connecticut judiciary. (CONN. JUD. BRANCH at 1.) Judge Stewart has months of

experience and familiarity with the facts of this case. And the central legal issues—*i.e.*,

the standard for proving a material adverse change and the conduct required under an

ordinary course covenant—are matters of Connecticut state law. The Superior Court has

a duty to determine important issues of state law such as those presented here. The

mandate of a federal court is precisely the opposite: to abstain from "deciding state law

issues where possible". *See Parmalat II*, 671 F.3d at 269. Under circumstances such as

these, common sense and principles of comity require this Court to abstain. The

litigation can be more suitably and "timely adjudicated . . . in a State forum of

appropriate jurisdiction". 28 U.S.C. § 1334(c)(2).

Because the first two factors unanimously support abstention, this Court need not continue with its inquiry. But, to the extent they are relevant, the third and fourth factors lead to the same result. The third factor relates to the "status" of Prospect's bankruptcy proceeding. *Parmalat I*, 639 F.3d at 581. In Chapter 11 proceedings like this one, "expeditious resolution of the state law claims" may be particularly necessary "to determine what resources are available to fund the [debtor's] reorganization." *Id.* That is all the more reason why this Court should abstain. Pending before the Superior Court is Plaintiff's motion for summary judgment. Allowing the Superior Court to decide that motion could swiftly resolve the issues in this litigation. Similarly, "the fourth factor asks whether the state court proceeding would prolong the administration or liquidation of the estate." *Id.* For the reasons enumerated above, the answer to that question is no. Indeed, in this instance, it is *federal* adjudication that would "slow the pace of litigation dramatically by leading to duplicative motions practice, repetitious discovery, and parallel adjudication of common issues." *See id.* (quotation omitted). Accordingly, mandatory abstention is required here.

> **B.    In the Alternative, the Doctrines of Permissive Abstention and Equitable Remand Weigh Heavily in Favor of State Court Adjudication.**

Abstention is also appropriate under 28 U.S.C. § 1334(c)(1) and 28 U.S.C. § 1452(b). Even where the requirements for mandatory abstention are not met, a district court or a bankruptcy court may abstain from hearing a proceeding related to a title 11 case "in the interest of comity with State courts or respect for State law" under 28 U.S.C. § 1334(c)(1), or may remand any removed claim or cause of action related to a bankruptcy case "on any equitable ground" under 28 U.S.C. § 1452(b). *In re Cathedral of the Incarnation*, 99 F.3d 66, 69 (2d Cir. 1996) (defining "equitable ground" as "one

that is fair and reasonable").  For the reasons discussed in Section IV.A, abstention is

mandatory in this case.  However, in the alternative, permissive abstention and equitable

remand are similarly appropriate here.

This Court considers the same factors when determining whether to

abstain pursuant to section 1334(c)(1) or to remand under section 1452(b).  *See, e.g.*, *In

re Nat'l E. Corp.*, 391 B.R. at 669-70; *Lafferty v. Jones*, No. AP 22-05019, 2022

WL 3444877, at *2 (Bankr. D. Conn. Aug. 15, 2022).  That is because both doctrines

have the same primary purpose—to encourage courts to decline jurisdiction when doing

so would be economical and efficient and would further principles of comity.  *See Fried*,

496 B.R. at 712-13.  There is no single test governing the statutes' application, and courts

consider many variables to determine "what makes sense under the specific facts and

circumstances presented".  *Lafferty*, 2022 WL 3444877, at *2.  Among the most

commonly cited considerations are:

1.  the extent to which issues of state law predominate in the litigation and the
    difficulty or unsettled nature of the applicable state law;

2.  whether the action could have been commenced in federal court absent the
    jurisdiction of the bankruptcy court;

3.  whether the action can be timely adjudicated in a state court and the effect that
    state court adjudication would have on the efficient administration of the
    bankruptcy estate;

4.  whether parallel state court proceedings exist and whether federal adjudication
    would create duplicative litigation and potentially inconsistent rulings; and

5.  the degree of relatedness or remoteness to the main bankruptcy case.

*See, e.g.*, *id.*; *In re Naugatuck Dairy Ice Cream Co., Inc.*, 106 B.R. 24, 28-29 (Bankr. D.

Conn. 1989); *In re Nat'l E. Corp.*, 391 B.R. at 670; *In re G.L.A.D. Enters., LLC*, No. 19-

50604, 2019 WL 5586962, at *2 (Bankr. D. Conn. Oct. 28, 2019), *aff'd*, No. 3:19CV1798 (MPS), 2020 WL 2813071 (D. Conn. May 29, 2020).

        Here, the factors weigh decisively in favor of abstention and remand.  As an initial matter, the claims before the Court involve only complex matters of unsettled state law, and federal jurisdiction is available solely because the Action is "related to" Prospect's bankruptcy.  *See* Section IV.A.ii-iv.  The central legal issues—*i.e.*, whether the parties to an M&A contract have satisfied the closing conditions, the standard for proving whether a material adverse change has occurred and the conduct required under the interim operating covenants post-signing—are matters of state law that no reported decisions in Connecticut, of which we are aware, have decided.  This may itself be determinative, as the Second Circuit has explained that section 1334(c)(1) was specifically drafted to provide for abstention in cases that turn on "difficult questions of state law".  *In re Pan Am. Corp.*, 950 F.2d 839, 845-46 (2d Cir. 1991); *In re Gen. Am. Commc'ns Corp.*, 130 B.R. 136, 146 (S.D.N.Y. 1991) ("Given the genesis of section 1334(c)(1), it is not surprising that the primary determinant for the exercise of discretionary abstention is whether there exist unsettled issues of state law.").  In other words, "where Connecticut law is not settled, the state courts are the proper forums to determine such issues".  *In re Caires*, No. 19-50934 (JAM), 2021 WL 2593848, at *3 (Bankr. D. Conn. June 24, 2021); *Matter of Dart & Bogue Co., Inc.*, 52 B.R. 594, 599 (Bankr. D. Conn. 1985) ("[T]he unsettled Connecticut law which controls the resolution of the issue in this proceeding should be resolved by the Connecticut courts."); *Lafferty*, 2022 WL 3444877, at *3 (remanding because "Plaintiffs' state law claims are extensive and complex" such that "[b]oth comity and respect for state law supports remanding the

actions to the Connecticut Superior Court"); *In re Southmark Storage Assocs. Ltd. P'ship*, 132 B.R. 231, 233 (Bankr. D. Conn. 1991) ("State courts afford the best forum for deciding issues whose resolution turns on interpretation of state law.").

   State court adjudication is all the more appropriate here because abstention and remand would serve efficiency and judicial economy. *See In re Nat'l E. Corp.*, 391 B.R. at 670. As explained in greater detail in Section IV.A.vi, this matter will be resolved expeditiously in the Superior Court. The pleadings have closed, a summary judgment motion has been filed and a trial date has been set. Accordingly, abstention and remand would "foster the interests of judicial administration, comprehensive disposition of litigation, conservation of judicial resources and fairness to the parties". *Matter of Windtech, Inc.*, 80 B.R. 628, 631 (D. Conn. 1987); *see In re Nat'l E. Corp.*, 391 B.R. at 670-71 (abstaining where Connecticut Superior Court had set deadlines for discovery, dispositive motions and trial). If anything, "retention of federal jurisdiction could *detract* from the efficient administration of the estate and impose an unnecessary burden on the Bankruptcy Court by requiring the bankruptcy court to expend time and resources on the state law action that could otherwise be spent administering to the estate". *Drexel Burnham Lambert Grp., Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 408 (S.D.N.Y. 1991) (emphasis added). It would be neither efficient nor proper to permit Prospect to "relitigate issues already presented or decided" in the mature state court litigation. *See In re G.L.A.D. Enters., LLC*, 2019 WL 5586962, at *3.

   This State Law Contract Action has been litigated for months in the home forum of Plaintiff and nearly all of the Defendants, where substantially all of the evidence, witnesses and parties are located. Fact discovery is nearly complete and a

motion for summary judgment is pending in the state court.  Because abstention would be "in the interest of justice, . . . comity with State courts [and] respect for State law", this Court should decline to hear this proceeding and remand to the Connecticut Superior Court.  *See* 28 U.S.C. § 1334(c)(1).

## CONCLUSION

For the reasons stated above, YNHH respectfully requests that this Court abstain from hearing the State Law Contract Action and remand the proceeding to the Connecticut Superior Court.

Respectfully submitted,

PLAINTIFF YALE NEW HAVEN HEALTH
SERVICES CORPORATION,

By:    /s/ *Kim E. Rinehart*
       Kim E. Rinehart (ct24427)
       WIGGIN and DANA LLP
       265 Church Street
       P.O. Box 1832
       New Haven, CT 06508
       (203) 498-4400
       (203) 782-2889 (fax)
       krinehart@wiggin.com

       OF COUNSEL:
       Daniel Slifkin*
       Michael A. Paskin*
       CRAVATH, SWAINE & MOORE LLP
       Two Manhattan West
       375 Ninth Street
       New York, NY 10001
       (212) 474-1000
       dslifkin@cravath.com
       mpaskin@cravath.com
       (*Pro Hac Vice Forthcoming)

31