**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

_____x

YALE NEW HAVEN HEALTH SERVICES CORPORATION,

               Plaintiff,

      v.

PROSPECT MEDICAL HOLDINGS, INC., PROSPECT CT, INC., PROSPECT ECHN, INC. D/B/A EASTERN CONNECTICUT HEALTH NETWORK, PROSPECT ROCKVILLE HOSPITAL, D/B/A THE ROCKVILLE GENERAL HOSPITAL, PROSPECT MANCHESTER HOSPITAL, INC. D/B/A THE MANCHESTER MEMORIAL HOSPITAL, PROSPECT WATERBURY, INC. D/B/A THE WATERBURY HOSPITAL, PROSPECT CT MEDICAL FOUNDATION, INC. D/B/A EASTERN CT MEDICAL PROFESSIONALS AND ALLIANCE MEDICAL GROUP, PROSPECT ECHN HOME HEALTH, INC. D/B/A VISITING NURSE AND HEALTH SERVICES OF CONNECTICUT, CARDIOLOGY ASSOCIATES OF GREATER WATERBURY LLC, PROSPECT CT MANAGEMENT SERVICES, INC. D/B/A MEDICAL PRACTICE PARTNERS, HEALTHCARE STAFFING ON DEMAND LLC, PROSPECT WATERBURY AMBULATORY SURGERY, LLC AND PROSPECT WATERBURY HOME HEALTH, INC. D/B/A VNA HEALTH AT HOME,

               Defendants.

_____x

Case No.: 3:25-cv-00105

Honorable Michael P. Shea

February 18, 2025

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR ABSTENTION AND EQUITABLE REMAND

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT ..........................................................................................................5

    I.     THE COURT SHOULD ADJUDICATE THE TRANSFER MOTION FIRST.............................................................................................................5

    II.    MANDATORY ABSTENTION DOES NOT APPLY TO THE ACTION ...........8

         A.    The Action is Core to Defendants' Chapter 11 Cases .................................8

         B.    The Only Way for the Action to Be Timely Adjudicated is By Transferring It To The Texas Bankruptcy Court .......................................12

    III.   YALE HAS FAILED TO ESTABLISH THAT PERMISSIVE ABSTENTION OR EQUITABLE REMAND ARE WARRANTED...................15

CONCLUSION........................................................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*In re Adelphia Commc'ns Corp.*
    285 B.R. 127 (Bankr. S.D.N.Y. 2002) .......................................................................17

*Akorn, Inc. v. Fresenius Kabi AG*
    No. CV 2018-0300-JTL, 2018 WL 4719347 (Del. Ch. Oct. 1, 2018), *aff'd*, 198 A.3d
    724 (Del. 2018) ............................................................................................................17

*In re Allegheny Health, Educ. & Rsch. Corp.*
    No. 98-25773, 1999 WL 1033566, at *1 (Bankr. E.D. Pa. Nov. 10, 1999).............................6

*In re Arnold Print Works, Inc.*
    815 F.2d 165 (1st Cir.1987) .........................................................................................11

*Baker v. Simpson*
    613 F.3d 346 (2d Cir. 2010), *cert. denied*, 562 U.S. 1149 (2011) ............................8

*Bardy Diagnostic, Inc. v. Hill-Rom, Inc.*
    No. CV 2021-0175-JRS, 2021 WL 2886188 (Del. Ch. Jul. 9, 2021) .....................17

*Beard v. Braunstein*
    914 F.2d 434 (3d Cir. 1990) .........................................................................................11

*In re Ben Cooper, Inc.*
    896 F.2d 1394 (2d Cir. 1990), *cert. granted,* 497 U.S. 1023 (1990) .....................11

*Camofi Master LDC v. U.S. Coal Corp.*
    527 B.R. 138 (Bankr. S.D.N.Y. 2015) ...........................................................15, 16, 17

*Carrega v. Grubb & Ellis Co. (In re Grubb & Ellis Co.)*
    523 B.R. 423 (S.D.N.Y. 2014) ....................................................................................10

*City of Del Rey Oaks v. Fed./JER Assocs., LLC*
    No. 13-CV-01363, 2013 WL 3154000 (N.D. Cal. June 18, 2013)...........................6

*Colorado River Water Conservation Dist. v. United States*
    424 U.S. 800 (1976) ....................................................................................................15

*Connecticut Res. Recovery Auth. v. Lay*
    292 B.R. 464 (D. Conn. 2003) .......................................................................................8

*In re Consulting Actuarial Partners, Ltd. P'ship*
    72 B.R. 821 (Bankr. S.D.N.Y. 1987) ...........................................................................12

*In re Convent Guardian Corp.*
    75 B.R. 346 (Bankr. E.D. Pa. 1987) .......................................................................6

*In re Culture Project*
    571 B.R. 555 (Bankr. S.D.N.Y. 2017) ...................................................................10

*In re Enron Corp.*
    317 B.R. 629 (Bankr. S.D.N.Y. 2004) .....................................................................5

*In re Houbigant, Inc.*
    182 B.R. 958, 966 (Bankr. S.D.N.Y. 1995 ..............................................................6

*In re IBP Inc. S'holders Litig.*
    789 A.2d 14 (Del. Ch. 2001) .................................................................................17

*In re Leco Enters., Inc.*
    144 B.R. 244 (S.D.N.Y. 1992) ...............................................................................12

*Marah Wood Prods., LLC v. Jones*
    534 B.R. 465 (D. Conn. 2015) ...................................................................... *passim*

*Navon v. Mariculture Prods. Ltd.*
    395 B.R. 818 (D. Conn. 2008) .................................................................................6

*In re Pali Holdings, Inc.*
    488 B.R. 841 (Bankr. S.D.N.Y. 2013) .....................................................................9

*In re Patriot Coal Corp.*
    No. 15-32450-KLP, 2016 WL 5360950, at *2 (Bankr. E.D. Va. Sept. 23, 2016)..............5, 17

*In re Quigley Co., Inc.*
    676 F.3d 45 (2d Cir. 2012) ......................................................................................9

*In re Sapphire Development, LLC*
    523 B.R. 1 (D. Conn. 2014) ................................................................................9, 10

*Schumacher v. White*
    429 B.R. 400 (E.D.N.Y. 2010) ..............................................................................16

*Tallo v. Gianopoulos*
    321 B.R. 23 (E.D.N.Y. 2005) ..................................................................................5

*In re Velo Holdings Inc.*
    475 B.R. 367 (Bankr. S.D.N.Y. 2012) ...................................................................10

*In re WorldCom, Inc. Sec. Litig.*
    293 B.R. 308 (S.D.N.Y. 2003)...........................................................................8, 16

<u>Statutes</u>

11 U.S.C. § 305 ........................................................................................................................... 10

28 U.S.C.
    § 157 ..................................................................................................................................... 8, 9
    § 1334 ............................................................................................................................ *passim*
    § 1404 .................................................................................................................................... 4, 6
    § 1412 .................................................................................................................................... 4, 6
    § 1452 ............................................................................................................................. 4, 6, 15

<u>Other Authorities</u>

Federal Rule of Bankruptcy Procedure 9027 ................................................................................ 6

Defendants Prospect Medical Holdings, Inc., Prospect CT, Inc., Prospect ECHN, Inc. d/b/a Eastern Connecticut Health Network, Prospect Rockville Hospital, Inc. d/b/a The Rockville General Hospital, Prospect Manchester Hospital, Inc. d/b/a The Manchester Memorial Hospital, Prospect Waterbury, Inc. d/b/a The Waterbury Hospital, Prospect CT Medical Foundation, Inc. d/b/a Eastern CT Medical Professionals and Alliance Medical Group, Prospect ECHN Home Health, Inc. d/b/a Visiting Nurse and Health Services of Connecticut, Cardiology Associates of Greater Waterbury, LLC, Prospect CT Management Services, Inc. d/b/a Medical Practice Partners, Healthcare Staffing On Demand, LLC, Prospect Waterbury Ambulatory Surgery, LLC, and Prospect Waterbury Home Health, Inc. d/b/a VNA Health at Home (collectively, "Defendants"), respectfully submit this Memorandum of Law in opposition to Plaintiff Yale New Haven Health Services Corporation's ("Plaintiff" or "Yale") *Motion for Abstention or Equitable Remand* (ECF Doc. No. 11, the "Remand Motion").[1]

## PRELIMINARY STATEMENT

Yale's chief contention in the Remand Motion is that this Action[2] is not core to Defendants' pending Chapter 11 Cases,[3] and therefore is subject to mandatory abstention pursuant to 28 U.S.C. § 1334(c). That contention, however, is counterfactual: The Action concerns the disposition of all of Defendants' hospital and medical facility *assets* in Connecticut. Those assets consist of Defendants' three Connecticut hospitals—the Rockville General Hospital, the Manchester Memorial Hospital, and the Waterbury Hospital—and related medical facilities (collectively, the

---

[1] Yale's memorandum of law in support of the Motion (ECF Doc. No. 11-1) is cited hereinafter as "Mem."

[2] The "Action" refers to the above-captioned action, which was originally commenced in the Superior Court of the State of Connecticut (the "State Court"), Docket Nos.: X07-HHD-CV24-6184328-S and was subsequently removed to this Court.

[3] The "Chapter 11 Cases" refer to Defendants' and affiliated debtors' pending chapter 11 cases, which were commenced on January 11, 2025, before the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Texas Bankruptcy Court"), and are being jointly administered under *In re Prospect Medical Holdings, Inc.*, Ch. 11 Case No. 25-80002 (SGJ) (Jointly Administered).

"Connecticut Hospital Assets"), which, in an October 2022 asset purchase agreement (the "APA"), Yale agreed to purchase for $435 million. Rather than closing on the APA and benefiting patients in underserved communities in northern and central Connecticut, Yale commenced the Action in May 2024 in an effort to obtain a judicial declaration that it can evade its obligations under the APA.

The outcome of the Action will be near determinative of the route that Defendants and their affiliated debtors take in the Chapter 11 Cases: if Yale is correct that it is not required to close on the purchase of these assets, then they can be sold in a Section 363 sale in the Chapter 11 Cases for the benefit of creditors. And, if Defendants are correct that Yale is required to close on the purchase, then those assets will not be available for sale to other buyers in bankruptcy, and will instead augment the estate with $435 million in cash. Either way, Defendants need to know the outcome of the Action in order to develop and confirm their Chapter 11 reorganization plans. This is a prime example of a proceeding that is "core" to, and therefore "arises in," the underlying Title 11 proceeding. *See Marah Wood Prods., LLC v. Jones*, 534 B.R. 465, 474 (D. Conn. 2015) ("[P]roceedings in which the estate or the debtor seek to adjudicate their property rights in certain property constitute core proceedings, even if the adjudication of those rights is governed solely by state law.").

It is particularly disingenuous for Yale to maintain that the Action is a simple pre-petition contract action governed by state law when Yale's general counsel admitted under oath at his deposition a few months ago that, ███████████ REDACTED ███████████

████████████████████████████████████████████

REDACTED (Aseltyne Dep. Tr.[4] 278:8-16; *see also infra* 11–12). REDACTED

Yale cannot now maintain that the Action and the Chapter 11 Cases are anything other than closely intertwined:  indeed, but for Yale's litigation strategy, Prospect Medical Holdings, Inc. may not have needed to even file for Chapter 11 protection, and the other Defendants (whose sole purpose is to own and manage the Connecticut Hospital Assets) (the "Connecticut Defendants") would certainly not have needed to do so.  This is because, had Yale closed on the APA, as required, the Connecticut Defendants would perforce not have been debtors in bankruptcy, as the sale would have been long consummated.  The Connecticut Defendants filed for one reason, and one reason only—because Yale violated its obligations under the APA.  (*See infra* Point II.A.)

Even if the Action were not core to the Chapter 11 Cases (and it is), this matter would still not qualify for mandatory abstention under 28 U.S.C. § 1334(c) for the simple reason that it can no longer be "timely adjudicated" in the State Court.  As Yale concedes in its motion papers, the Action cannot proceed in State Court by virtue of the automatic stay.  Nor has Yale moved to lift or modify the automatic stay, despite having full notice of the pendency of the Chapter 11 Cases since January 12, 2025.  If there is any forum where the Action can be expeditiously resolved, it is the Texas Bankruptcy Court, not the State Court, which has already become familiar with this dispute by virtue of First Day Motions and subsequent court filings, and before which Defendants and several witnesses and interested third-parties from the Action have appeared.  (*See infra* Point II.B.)

---

[4] The "Aseltyne Dep. Tr." refers to the transcript of the deposition of Yale's general counsel, Bill Aseltyne, which Defendants took in the Action on December 17, 2024.  Excerpts of the portions of the Aseltyne Dep. Tr. cited herein are attached as Exhibit A to the Declaration of Joshua I. Schlenger in opposition to the Remand Motion, filed contemporaneously herewith.

Nor does this Action qualify for permissive abstention under 28 U.S.C. § 1334(c)(1) or equitable remand under 28 U.S.C. § 1452(b).  Yale's main basis for these discretionary forms of remand is that the Action turns, at least in part, on the interpretation of the APA's "material adverse change" or MAC clause, which—according to Yale—no Connecticut court has yet interpreted.  But the mere fact that no Connecticut state court has yet issued a decision interpreting or applying a MAC clause does not automatically create "unique or unsettled issues of state law that warrant abstention on comity grounds."  *Marah Wood*, 534 B.R. at 478.  Indeed, Yale has failed to show any split of authority amongst the relatively few U.S. court decisions that have had occasion to issue decisions regarding MAC clause.  This is unsurprising, as these decisions, regardless of the complexity of their factual subject matter, entail straightforward applications of common law contract principles that do not implicate any specific aspect of Connecticut public policy.  There is no reason to believe that the Texas Bankruptcy Court, which (like many federal courts) routinely applies other states' contract laws, cannot do so here.  (*See infra* Point III.)

In any event, this Court need not be the tribunal to make determinations as to whether the Action is "core," nor need it address Yale's other points regarding remand and abstention.  One day before Yale filed its Remand Motion, Defendants filed a motion to transfer the Action to the Texas Bankruptcy Court pursuant to 28 U.S.C. § 1412 or, in the alternative, 28 U.S.C. § 1404(a). (*See* ECF Doc. No. 10, the "Transfer Motion.")[5]  Several courts within this Circuit and nationwide have confirmed that a court confronted with dueling motions for transfer and remand should, after satisfying itself of federal subject matter jurisdiction, address the transfer motion first and, if granted, transfer the case to the "home bankruptcy court"—which is best situated to address remand and abstention issues, seeing as they turn on the relationship between the action and the

---

[5] Defendants incorporate herein by reference their points made in the Transfer Motion.

bankruptcy proceeding. This Court should do the same here: Yale concedes that the federal courts, at a minimum, have subject matter jurisdiction over the Action as a case "related to" the Prospect bankruptcy proceedings in the Texas Bankruptcy Court. Defendants respectfully submit that the best course of action is for this Court to transfer the Action to the Texas Bankruptcy Court, which has already been advised of this Action as part of its ongoing supervision of Defendants' bankruptcy estates, and allow that court to address the remand and abstention issues. (*See infra* Point I.)

## ARGUMENT

### I.  THE COURT SHOULD ADJUDICATE THE TRANSFER MOTION FIRST

Yale maintains that "[c]ourts in this Circuit have consistently held that, [w]hen presented with competing motions to remand a case and to transfer venue, a court is to consider the remand motion first, and then address the motion to transfer venue only if it first denies the motion to remand." (Mem. 10 (citation, internal quotation marks, and emphasis omitted).) This is incorrect and a gross overstatement. "[A] court may, after deciding the issue of jurisdiction, instead exercise its discretion to transfer the case and permit the home bankruptcy court to decide the issue of remand." *Tallo v. Gianopoulos*, 321 B.R. 23, 28 (E.D.N.Y. 2005). "Permitting the bankruptcy court to decide the motion for remand is in accord with the strong presumption in favor of placing venue in the district where the bankruptcy proceedings are pending." *Id.* at 29 (citing *In re Enron Corp.*, 317 B.R. 629, 642 (Bankr. S.D.N.Y. 2004)).

On this basis, courts in this Circuit, and throughout the country, have frequently resolved the transfer motion first and deferred to the "home bankruptcy court" to resolve issues relating to remand. *See, e.g.*, *Tallo*, 321 B.R. at 29 (concluding that "the bankruptcy court of the Southern District of New York, being the home court of the bankruptcy proceeding and being familiar with the litigation, is better situated to determine the propriety of remand"); *In re Patriot Coal Corp.*,

No. 15-32450-KLP, 2016 WL 5360950, at *2 (Bankr. E.D. Va. Sept. 23, 2016) ("In an opinion entered April 25, 2016, the [Southern District of] New York Bankruptcy Court granted the Transfer Motion and denied the Remand Motion without prejudice, ruling that this Court, being the 'home' bankruptcy court, properly should consider the Remand Motion."); *accord Navon v. Mariculture Prods. Ltd.*, 395 B.R. 818, 823 (D. Conn. 2008) (holding, in response to cross motions to abstain and to refer to the bankruptcy court that it was "within the bankruptcy court's province to rule on whether abstention is appropriate, depending on whether this action is a core or 'related to' proceeding, and so the Court denies Plaintiff's motion to abstain without prejudice to renew following referral").[6]

The present case illustrates why this course of action makes sense. Here, the parties dispute whether this lawsuit is "core" to the Chapter 11 Cases, and this a key issue on Yale's Remand Motion. That determination is best made by the Texas Bankruptcy Court, which is in the midst of supervising the administration of Defendants' bankruptcy estates, and is well aware of this Action by virtue of First Day Motions and subsequent filings. (*See infra* Point I.B.)

---

[6] *See also In re Houbigant, Inc.*, 182 B.R. 958, 966 (Bankr. S.D.N.Y. 1995) ("On or about August 5, 1994, pursuant to 28 U.S.C. § 1452(a) and Bankruptcy Rule 9027, Houbigant removed the Motion to the United States Bankruptcy Court for the Eastern District of New York. On or about August 12, 1994, Houbigant moved pursuant to 28 U.S.C. §§ 1412 and 1404(a) to transfer the Motion to this court. On or about August 17, 1994, Claimants objected to the Motion and cross-moved for an order pursuant to 28 U.S.C. § 1452(b) and Bankruptcy Rule 9027 remanding the Motion to the state court. By order dated September 20, 1994, Chief Judge Conrad Duberstein of the United States Bankruptcy Court for the Eastern District of New York granted Houbigant's venue motion, but did not consider the merits of Claimants' remand motion."); *In re Allegheny Health, Educ. & Rsch. Corp.*, No. 98-25773, 1999 WL 1033566, at *1 (Bankr. E.D. Pa. Nov. 10, 1999) ("The weight of authority, including several decisions of this Court, provide that, 'where a bankruptcy court is simultaneously confronted with (1) a Motion, pursuant to 28 U.S.C. § 1412, to transfer or change the venue of an action which has been removed to it pursuant to 28 U.S.C. § 1452(a); and (2) a Motion to remand or otherwise abstain from hearing the change of venue action, pursuant to 28 U.S.C. § 1334(c), the action should be transferred to the 'home' court of the bankruptcy to decide the issue of whether to remand or abstain from hearing the action.'") (quoting *In re Convent Guardian Corp.*, 75 B.R. 346, 347 (Bankr. E.D. Pa. 1987)); *City of Del Rey Oaks v. Fed./JER Assocs., LLC*, No. 13-CV-01363, 2013 WL 3154000, at *3 (N.D. Cal. June 18, 2013) (recommending grant of motion to transfer action to Delaware bankruptcy court and deferring to that court on remand issues, explaining: "The Northern District of California, not having the bankruptcy proceeding before it, is ill-equipped to consider several of these [remand] issues, including whether state law issues predominate over bankruptcy issues, the degree of relatedness or remoteness of proceeding to main bankruptcy case, the feasibility of severing state law claims from core bankruptcy matters, and the burden on the bankruptcy court's docket.").

This was precisely the reasoning offered by the bankruptcy court in *In re Aztec Industries, Inc.* in granting the transfer motion after assuring itself of federal jurisdiction, and deferring to the home bankruptcy court on the remand issues:

> The venue issues raised by the parties require an examination of both the case to be transferred and its relationship to the Aztec Bankruptcy case. Obviously, the Oklahoma Court is more familiar with the pending Bankruptcy case and what may be required for its efficient administration. In addition, the Court which would try the case can better evaluate all the interests involved, and determine its own expertise in the particular areas of the law which form the basis of the action, as well as its own scheduling and time constraints. This Court's speculation on these matters would not be an adequate substitute for a knowledgeable determination based upon the actual facts and circumstances. Moreover, allowing the Oklahoma Court to rule on the remand issues minimizes the potential conflicts which could arise due to differences in controlling authority between the Courts. Accordingly, a final ruling on the venue issues, and the many sub-issues which have been raised within the context of venue, remand, and abstention, should be left to the "home" Bankruptcy Court in Oklahoma.

84 B.R. 464, 467 (Bankr. N.D. Ohio 1987).

That reasoning is on point here. Yale does not dispute that the federal courts have subject matter jurisdiction over this Action pursuant to 28 U.S.C. § 1334. (*See, e.g.*, Mem. 28 (conceding that "federal jurisdiction is available . . . because the Action is 'related to' Prospect's bankruptcy"); *id.* at 3 (acknowledging that "the State Law Contract Action is 'related to' Prospect's bankruptcy in that it could result in cash proceeds for the estate"). In turn, the parties' venue positions implicate, at least in part, the extent to which the Action impacts the administration of Defendants' bankruptcy estates in the Chapter 11 Cases.

Accordingly, Defendants respectfully submit that this Court should address—and grant—the Transfer Motion first, and deny the Remand Motion without prejudice.

## II.  MANDATORY ABSTENTION DOES NOT APPLY TO THE ACTION

"'[A] party seeking mandatory abstention must prove each of the following':  (1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is 'related to' but not 'arising in' a bankruptcy case or 'arising under' the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; and (6) that action can be 'timely adjudicated' in state court." *Connecticut Res. Recovery Auth. v. Lay*, 292 B.R. 464, 471 (D. Conn. 2003) (quoting *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 331 (S.D.N.Y. 2003)).  "A party is not entitled to mandatory abstention if it fails to prove any one of the statutory requirements." *Id.* (quoting *WorldCom*, 293 B.R. at 331).

As set forth below, Yale's request for mandatory abstention fails because, at a minimum, (i) the Action "arises in"—and is therefore "core" to—Defendants' Chapter 11 Cases because it will determine the disposition of the Connecticut Hospital Assets subject to the APA, and (ii) the Action can no longer be timely adjudicated in the State Court.

### A.  <u>The Action is Core to Defendants' Chapter 11 Cases</u>

As the statute confirms, and as Yale acknowledges (*see* Mem. 12), mandatory abstention under 28 U.S.C. § 1334(c)(2) does not apply to claims or causes of action "arising in a case under title 11."  Claims or causes of action "arising in . . . a case under title 11" encompass "core proceedings" that implicate the bankruptcy court's "plenary jurisdiction."  *See Baker v. Simpson*, 613 F.3d 346, 349-51 (2d Cir. 2010), *cert. denied*, 562 U.S. 1149 (2011) (affirming "bankruptcy court's exercise of its 'arising in' jurisdiction, as set forth in 28 U.S.C. § 1334(b)," and rejecting applicability of mandatory abstention statute, finding that "the adjudication of Baker's malpractice and other claims was an 'essential part of administering the estate' and therefore implicated the bankruptcy court's 'core jurisdiction'").  28 U.S.C. § 157 provides a non-exhaustive list of "core" proceedings, the first of which is "matters concerning the administration of the estate."  *See* 28

U.S.C § 157(b)(2)(A). "If a proceeding is designated as a 'core' proceeding, the mandatory abstention provision cannot apply." *Marah Wood*, 534 B.R. at 474.

The Action is core to the Chapter 11 Cases for the simple reason that it is the proceeding by which the Texas Bankruptcy Court will know whether or not the Connecticut Hospital Assets, comprising $435 million worth of hospital and other medical facility assets that Yale promised to purchase in the APA, are or are not part of the estate. This touches on fundamental issues of estate administration, including whether the assets can be sold in a Section 363 sale for the benefit of Defendants' other creditors.

"[P]roceedings in which the estate or the debtor seek to adjudicate their property rights in certain property constitute core proceedings, even if the adjudication of those rights is governed solely by state law." *Marah Wood*, 534 B.R. at 474. Indeed, "[b]ankruptcy jurisdiction is appropriate over 'third-party non-debtor claims that directly affect the *res* of the bankruptcy estate.'" *In re Quigley Co., Inc.*, 676 F.3d 45, 53 (2d Cir. 2012); *see also In re Pali Holdings, Inc.*, 488 B.R. 841, 848–49 (Bankr. S.D.N.Y. 2013) (determination whether property is part of a bankruptcy estate is a "core" proceeding even after *Stern*).

This Court's decision in *In re Sapphire Development, LLC*, 523 B.R. 1 (D. Conn. 2014) (Shea, J.), highlights why this makes sense. Similar to the present case, *Sapphire* involved a pre-petition suit (a judgment collection action), pursuant to which McKay, the judgment creditor, "[i]n state court, . . . sought to recover his judgment against Longman [the judgment debtor] from Sapphire, by reaching Sapphire's sole asset, a 25.237-acre parcel of real property located . . . in Ridgefield, Connecticut." *Id.* at 4. "The case was scheduled to begin trial on January 4, 2013," but, "[t]hree days before trial, Sapphire voluntarily commenced [a] bankruptcy, and the state court action was stayed." *Id.* McKay, the judgment creditor in the state court action, then went into

bankruptcy court and moved, *inter alia*, for the bankruptcy court to abstain under 11 U.S.C. § 305(a)(1) or, in the alternative, under 28 U.S.C. § 1334.  *Id.*

Though the bankruptcy court granted the abstention motion under Section 305(a)(1), this Court reversed and remanded.  *Id.* at 4–5.  Specifically, this Court reasoned that,

> [w]hile it is true that the validity of McKay's [pre-petition] claims [in state court] had not yet been judicially determined, *the bankruptcy court did not explain why the bankruptcy court itself should not adjudicate these issues as part of the Chapter 11 process*. The bankruptcy court has jurisdiction not only to judge a party's status as a creditor, *but also to determine what property belongs to the estate, even if the latter determination turns (as it often does) on state law*.

*Id.* at 10 (emphasis added).

Bankruptcy Court Judge Wiles from the Southern District of New York deployed similar reasoning in *In re Culture Project*, 571 B.R. 555 (Bankr. S.D.N.Y. 2017), in holding that disputes over ownership of equipment in a theater leased by the debtor were part of "core" bankruptcy court jurisdiction:

> The situation appears to be different as to the disputes over the lighting equipment, the audio equipment, and the theater chairs. A fundamental part of any bankruptcy proceeding is the collection of assets that belong to an estate.  Disputes often arise as to the nature of an estate's interest in particular property.    Courts have consistently held that a bankruptcy court has "core" jurisdiction to determine whether particular property belongs to an estate and may render final decisions as to such disputes.  *See*, *e.g.*, *Carrega v. Grubb & Ellis Co. (In re Grubb & Ellis Co.)*, 523 B.R. 423, 440 (S.D.N.Y. 2014); *In re Velo Holdings Inc.*, 475 B.R. 367, 386 (Bankr. S.D.N.Y. 2012).  Whether the debtor owns these items does not merely affect the estate; it goes directly to the issue of what the estate is, and the Bankruptcy Code directly gives the debtor rights to demand that property belonging to the estate be turned over to the debtor for application in the payment of creditor claims in the bankruptcy case.  To the extent that the debtor claims an ownership

> interest in the equipment and chairs, then, the Court has core
> jurisdiction over the dispute, and not merely "related to"
> jurisdiction.

*Id.* at 562.

Put another way, the identification of which assets are or are not part of the debtor's bankruptcy estate is a core bankruptcy function even where, as in the Action, the result turns on the application of state law. Unlike the cases Yale cites, the Action does not merely involve a claim for money damages that could or could not augment the amount of funds in the estate available for creditors:[7] it raises the more fundamental question of whether these multi-million dollar hospital assets are or are not part of the estate. Mandatory abstention under 28 U.S.C. § 1334(c)(2) has no applicability to such an action.

Confirming the "core" status of the Action to the Chapter 11 Cases is the fact that *Yale itself knew, even before Defendants and their debtor affiliates commenced the Chapter 11 Cases, that the parties' dispute under the APA would likely end up in bankruptcy court*. Yale's own cited case law confirms that the contract counterparty's "aware[ness] of the debtor's Chapter 11 status" is a factor to be considered in assessing whether a proceeding is "core" or not. *Cf. Beard v. Braunstein*, 914 F.2d 434, 445 (3d Cir. 1990) (distinguishing *In re Ben Cooper, Inc.,* 896 F.2d 1394 (2d Cir. 1990), *cert. granted,* 497 U.S. 1023 (1990), on this basis).

Well before the commencement of the Chapter 11 Cases on January 11, 2025, Yale was very much aware of the risk that the Action could put Defendants into bankruptcy. REDACTED

---

[7] Yale's own cases confirm the distinction between mere pre-petition contract damages actions and actions that impact the estate's assets. For example, the Court of Appeals in *Beard v. Braunstein*, 914 F.2d 434 (3d Cir. 1990), in holding that the underlying action was not core, relied on the fact that the contract claim was for rent, which was "only tangentially related to the bankruptcy," and distinguished *In re Arnold Print Works, Inc.,* 815 F.2d 165 (1st Cir. 1987), on the grounds that that case involved a "sale of assets of the estate and was thus itself an integral part of bankruptcy." *Beard*, 914 F.2d at 445.



The Action is core to the Chapter 11 Cases.  Yale knew it and anticipated it.  Mandatory abstention does not apply.

### B. The Only Way for the Action to Be Timely Adjudicated is By Transferring It To The Texas Bankruptcy Court

As noted, mandatory abstention applies only if action "can be timely adjudicated . . . in a State forum of appropriate jurisdiction."  28 U.S.C. § 1334(c)(2).  "The movant's bare assertion that a matter can be timely adjudicated . . . is insufficient to establish that the state court can timely adjudicate a matter."  *Marah Wood*, 534 B.R. at 475; *see also In re Leco Enters., Inc.,* 144 B.R. 244, 251 (S.D.N.Y. 1992) (a "naked assertion that the matter can be adjudicated in the state court, without more, is insufficient to satisfy this requirement") (quoting *In re Consulting Actuarial Partners, Ltd. P'ship,* 72 B.R. 821, 828 (Bankr. S.D.N.Y. 1987)).

That requirement is not satisfied here:  the Action cannot be timely adjudicated if it is remanded to State Court.  The *only* way it can be timely adjudicated is if it is transferred to the Texas Bankruptcy Court.  The reason is because, as Yale acknowledges,[8] an automatic stay of proceedings is in place that precludes the State Court from holdings further proceedings in the Action.  No party in interest, and certainly not Yale, has made a motion to the Texas Bankruptcy Court to lift or modify the stay in connection with the Action.  Accordingly, the only way to assure that this Action is indeed timely adjudicated is if it is transferred to the Texas Bankruptcy Court.

The Texas Bankruptcy Court, in turn, is well placed to pick up the adjudication of this Action where the State Court left off.  As of the commencement of the Chapter 11 Cases, the parties were nearing the close of fact discovery and about to begin expert discovery.  Moreover, while Yale had filed a motion for summary judgment based on narrow grounds, Defendants had not yet filed their opposition, and the motion was therefore not yet fully briefed to the State Court.

Thus, the Action, as of the bankruptcy filing, was at an inflection point well-suited to a handoff from the State Court to the Texas Bankruptcy Court.  And the Texas Bankruptcy Court itself has already started becoming familiarized with the particulars of this Action.  Indeed, Defendants' chief restructuring officer reported to the Texas Bankruptcy Court on the Action in his First Day Declaration:

> On October 5, 2022, PMH and certain of its Connecticut affiliates, as sellers, and Yale New Haven Health Services Corporation ("Yale"), as buyer, entered into that certain Asset Purchase Agreement (the "Yale Purchase Agreement") for the sale of (i) Prospect's three Connecticut-based hospitals and their related

---

[8] *See* Mem. 23 ("This Action has been assigned to the Connecticut Superior Court's Complex Litigation Docket on an expedited track, and, *prior to the case being automatically stayed by virtue of Prospect's bankruptcy filing on January 11, 2025*, was only seventeen days from the end of fact discovery, with a two-week trial scheduled to commence on April 22, 2025.") (emphasis added).

medical facilities (the "Yale Sale") in exchange for $435 million in cash, subject to certain adjustments.

. . . However, as described more fully below, Yale breached the agreement, failed to close, and subsequently filed a lawsuit against PMH and certain of its Connecticut affiliates in May 2024 to be relieved of its obligation to acquire the Connecticut hospitals, which Prospect had been relying on to strengthen its financial position. . . . As a result of the delayed closing, Prospect continues to experience operational losses in Connecticut, and the ensuing litigation with Yale has become an additional strain on resources, requiring significant time and expense to respond to Yale's allegations.

(Decl. of Paul Rundell in Supp. of Debtors' Ch. 11 Pets. & First Day Pleadings ¶¶ 76–77, ECF Doc. No. 41 in Chapter 11 Cases (filed Jan. 13, 2025) (footnote omitted).)  In turn, just last week, on February 10, 2025, the State of Connecticut filed a *Statement by the State of Connecticut in Connection with Prospect's Chapter 11 Cases* with the Texas Bankruptcy Court in the Chapter 11 Cases, which recounted the history of the APA and the Action; urged that "[i]t is critical that the Connecticut Hospitals [*i.e.*, the assets that Yale agreed to purchase under the APA] be transitioned to a new operator"; and reaffirmed that the State of Connecticut "**remains ready and willing to work with Prospect to, if possible, move forward with the proposed sale to Yale New Haven, and if not, to identify a new potential operator (or operators) for the hospitals on an expedited basis**."  (Statement ¶ 20, ECF Doc. No. 527 in Chapter 11 Cases (bold emphasis in original).)

Further confirming that the Texas Bankruptcy Court is the best forum to timely adjudicate the Action is the fact that three of the seven members of the creditors' committee—the Pension Benefit Guaranty Corporation ("PBGC"), Connecticut Health Care Associates District 1199 (the "Union"), and R4 Solutions, Inc. ("R4")—are involved or interested in the Action.  (*See Appointment of the Official Unsecured Creditors' Committee*, ECF Doc. No. 295 in Chapter 11

Cases (filed Jan. 29, 2025). The PBGC is key to Yale's claims for declaratory relief: as Yale acknowledges in the instant motion, its claim for declaratory relief is based, at least in part, on the allegation that Defendants "failed to fund [their] pension plans as required by law, causing the Pension Benefit Guaranty Corporation . . . to perfect liens upon the hospitals." (*See* Mem. 1.) Likewise, both R4 and the Union are actual or potential witnesses in the Action: Yale has sought document discovery and a deposition from R4 in the Action to support its claims regarding "material adverse change," and Yale's most recently amended complaint in the Action alleges events involving the Union, which is the nurses' union for Waterbury Hospital. (*See* 2d Am. Compl. ¶¶ 73 (Union), 89 (R4).)

The Action and the status of the assets under the APA are thus already live issues before the Texas Bankruptcy Court. And key witnesses and interested parties are already before the Texas Bankruptcy Court in connection with the Chapter 11 Cases. Accordingly, it is the Texas Bankruptcy Court that is best placed to timely adjudicate the Action as part of its overall administration of Defendants' bankruptcy estates.

### III. YALE HAS FAILED TO ESTABLISH THAT PERMISSIVE ABSTENTION OR EQUITABLE REMAND ARE WARRANTED

Yale's requests for permissive abstention under 28 U.S.C. § 1334(c)(1) or equitable remand pursuant to 28 U.S.C. § 1452(b) fare no better and should be denied, whether on the merits or without prejudice so that the Texas Bankruptcy Court itself can address them. "The analysis of a request for equitable remand under section 1452(b) and permissive abstention under section 1334(c)(1) is substantively the same." *Marah Wood*, 534 B.R. at 477 (citing *Camofi Master LDC v. U.S. Coal Corp.,* 527 B.R. 138, 143 (Bankr. S.D.N.Y. 2015)). "[P]ermissive abstention is only appropriate under certain 'extraordinary and narrow' circumstances" (*id.* (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976)), and "[t]he movant bears the

burden of establishing that permissive abstention is warranted." *Id.* (citing *WorldCom,* 293 B.R. at 334).

"When determining whether equity requires remand to state court," district courts in this Circuit consider the following "useful but non-exhaustive" list of factors:

> (1) the effect of the efficient administration of the bankruptcy estate;
> (2) the extent to which issues of state law predominate; (3) the
> difficulty or unsettled nature of the applicable state law; (4) comity;
> (5) the degree of relatedness or remoteness of the proceeding to the
> main bankruptcy case; (6) the existence of the right to a jury trial;
> and (7) prejudice to the involuntarily removed defendants.

*Id.* at 477–78 (quoting, *inter alia*, *Schumacher v. White,* 429 B.R. 400, 405 (E.D.N.Y. 2010)). Other factors that may be considered include "duplicative and economical use of judicial resources" and the "lessened possibility of inconsistent results." *Id.* at 478 (quoting *Camofi Master LDC,* 527 B.R. at 143).

Here, all of these factors militate against abstention or remand.

*First*, litigating the status of the Connecticut Hospital Assets under the APA in State Court, divorced from the overall administration of Defendants' estates in the Chapter 11 Cases, "will no doubt impede the efficient administration of the bankruptcy estate." *Id.* On this basis, factors (1) and (5) weigh against abstention or remand.

*Second*, contrary to Yale's chief point in favor of permissive abstention and equitable remand, while the causes of action in the Action are based on state law, there are no "unique or unsettled issues of state law that warrant abstention on comity grounds." *See id.* Yale maintains that such unique issues are present in the Action because it has been unable to identify any decisions in which a Connecticut court construed a MAC clause similar to that in the APA, which is the linchpin of Yale's case. But interpretation of the MAC clause boils down to a matter of

common law contract interpretation that does not differ materially across U.S. jurisdictions: indeed, Yale is unable to point to any split amongst the relatively few decisions nationwide that construe MAC clauses, and there is no reason to believe that the analysis would differ under Connecticut law.[9]  "[D]istrict court judges regularly 'address matters of state law,'" and the MAC issues here "are not novel, complex, or within the unique expertise of state courts."  *Id.* (citing *In re Adelphia Commc'ns Corp.,* 285 B.R. 127, 145–46 (Bankr. S.D.N.Y. 2002) (noting that areas in which state law expertise dominates include matters involving "family law, probate law, condemnation law, [and] other specialized areas of law not regularly addressed in the federal courts.").[10]  Nor is comity a factor favoring abstention or remand, as comity is "not a material factor where a matter does not involve state public policy or the state's public interest."  *Id.* (citing *Camofi*, 527 B.R. at 149).  The present APA-related dispute turns on private contract law, and does not implicate Connecticut public policy.

*Third*, no party in the Action has a right to a jury trial, as would tend to frustrate bankruptcy court jurisdiction.  The parties in the APA waived the right to jury trial in an all-caps provision. (*See* Friedman Decl. ¶ 13 (quoting APA § 10.4), ECF Doc. No. 10-2.)

*Fourth*, Yale has identified no material way in which it would be prejudiced by transfer to the Texas Bankruptcy Court, and the factors regarding judicial economy and avoiding inconsistent results far outweigh any theoretical prejudice Yale could identify.  Without federal court retention and transfer to the Texas Bankruptcy Court, the same assets will be the subject of both the Chapter

---

[9] To the contrary, as Yale implicitly acknowledges, the key U.S. jurisprudence on MAC clauses has been developed by the Delaware Chancery Court.  (*See* Mem. 25 (citing *Akorn, Inc. v. Fresenius Kabi AG*, No. CV 2018-0300-JTL, 2018 WL 4719347, at *44 (Del. Ch. Oct. 1, 2018), *aff'd*, 198 A.3d 724 (Del. 2018)).)  For other Delaware Chancery Court decisions on the subject, see *In re IBP Inc. S'holders Litig.*, 789 A.2d 14 (Del. Ch. 2001), and *Bardy Diagnostic, Inc. v. Hill-Rom, Inc.*, No. CV 2021-0175-JRS, 2021 WL 2886188 (Del. Ch. Jul. 9, 2021) (neither of which found that a material adverse change or material adverse effect had occurred in the respective cases).

[10] *See also Patriot Coal*, 2016 WL 5360950, at *5 (following transfer from New York bankruptcy court, denying motion for remand or abstention regarding commitment letter that contained New York choice-of-law clause, explaining that "[t]he state law contract issues are not complex").

11 Cases and the Action, but they will be adjudicated in two different proceedings—even though most of the parties and interested third-parties in the Action are already before the Texas Bankruptcy Court.

Under these circumstances, Yale cannot satisfy its burden to show that the "extraordinary and narrow circumstances" that justify permissive abstention or equitable remand are present in the Action. Yale's alternative grounds for abstention or remand should therefore be rejected and the motion denied.

## **CONCLUSION**

Accordingly, for the foregoing reasons, as well as those that Defendants may offer at oral argument, Defendants respectfully request that the Court deny the Remand Motion and grant Defendants' pending Transfer Motion.

Respectfully submitted,

By: _/s/ Robert S. Friedman_
Robert S. Friedman (ct31256)
Danielle Vrabie (*pro hac vice* application forthcoming)
Joshua I. Schlenger (admitted *pro hac vice*)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
30 Rockefeller Plaza
New York, NY 10112-0015
(212) 653-8700
rfriedman@sheppardmullin.com
dvrabie@sheppardmullin.com
jschlenger@sheppardmullin.com

Amy P. Blume, Esq.
Bershtein, Volpe, & McKeon, PC 900 Chapel Street, 11th Floor New Haven, CT 06510
Juris # ct03821
Tel. # (203) 777-5800
apb@bvmlaw.com

*Counsel for Defendants*