# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

───────────────────────────────x

YALE NEW HAVEN HEALTH SERVICES CORPORATION,

        Plaintiff,

        v.

PROSPECT MEDICAL HOLDINGS, INC., PROSPECT CT, INC., PROSPECT ECHN, INC. D/B/A EASTERN CONNECTICUT HEALTH NETWORK, PROSPECT ROCKVILLE HOSPITAL, D/B/A THE ROCKVILLE GENERAL HOSPITAL, PROSPECT MANCHESTER HOSPITAL, INC. D/B/A THE MANCHESTER MEMORIAL HOSPITAL, PROSPECT WATERBURY, INC. D/B/A THE WATERBURY HOSPITAL, PROSPECT CT MEDICAL FOUNDATION, INC. D/B/A EASTERN CT MEDICAL PROFESSIONALS AND ALLIANCE MEDICAL GROUP, PROSPECT ECHN HOME HEALTH, INC. D/B/A VISITING NURSE AND HEALTH SERVICES OF CONNECTICUT, CARDIOLOGY ASSOCIATES OF GREATER WATERBURY LLC, PROSPECT CT MANAGEMENT SERVICES, INC. D/B/A MEDICAL PRACTICE PARTNERS, HEALTHCARE STAFFING ON DEMAND LLC, PROSPECT WATERBURY AMBULATORY SURGERY, LLC AND PROSPECT WATERBURY HOME HEALTH, INC. D/B/A VNA HEALTH AT HOME,

        Defendants.

───────────────────────────────x

Case No.: 3:25-cv-00105

Honorable Michael P. Shea

March 21, 2025

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO SEAL UNREDACTED REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR ABSTENTION AND EQUITABLE REMAND**

-i-

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 4

    I.    THE DISPUTED MATERIALS ENJOY A STRONG PRESUMPTION OF PUBLIC ACCESS ................................................................................................ 5

    II.    REDACTED CANNOT OVERCOME THE STRONG PRESUMPTION OF PUBLIC ACCESS ........................................... 11

CONCLUSION .................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

<u>Cases</u>

*Agence France Presse v. Morel*
  No. 10-CV-2730 AJN, 2014 WL 5568562 (S.D.N.Y. Nov. 3, 2014) ..................................7, 8

*Bernsten v. O'Reilly*
  307 F. Supp. 3d 161 (S.D.N.Y. 2018).......................................................................6, 8, 10, 12

*CSL Silicones, Inc. v. Midsun Grp. Inc.*
  No. 3:14-cv-1897(CSH), 2017 WL 4750701 (D. Conn. July 12, 2017)....................................4

*D'Alessandro v. Arrow Pharmacy Holdings, LLC*
  No. 3:20-CV-536 (SVN), 2023 WL 1967245 (D. Conn. Feb. 13, 2023) ..................................7

*Gambale v. Deutsche Bank AG*
  377 F.3d 133 (2d Cir. 2004)...............................................................................................6, 10

*Lugosch v. Pyramid Co. of Onondaga*
  435 F.3d 110 (2d Cir. 2006)..................................................................................................4, 5

*Mirlis v. Edgewood Elm Hous., Inc.*
  581 F. Supp. 3d 394 (D. Conn. 2022), *amended on reconsideration on other grounds*,
  No. 3:19-CV-700 (CSH), 2022 WL 522109 (D. Conn. Feb. 21, 2022) ...................................5

*Olson v. Major League Baseball*
  29 F.4th 59 (2d Cir. 2022) .........................................................................................................5

*Prange v. Arszyla*
  No. 3:22-CV-1133 (JCH), 2023 WL 7277256 (D. Conn. July 10, 2023) ................................7

*Press-Enterprise Co. v. Superior Court*
  464 U.S. 501 (1984)..................................................................................................................5

*Robinson v. De Niro*
  No. 19-CV-09156 (LJL), 2023 WL 3728350
  (S.D.N.Y. May 26, 2023)...........................................................................................5, 8, 10, 13

*United States Sec. & Exch. Comm'n v. Ahmed*
  No. 3:15CV675 (JBA), 2017 WL 5515907 (D. Conn. Sept. 19, 2017)....................................5

*United States v. Glens Falls Newspapers, Inc.*
  160 F.3d 853 (2d Cir. 1998).................................................................................................8, 9

*United States v. Graham*
  257 F.3d 143 (2d Cir. 2001).......................................................................................................7

*Wells Fargo Bank, N.A. v. Wales LLC*
   993 F. Supp. 2d 409 (S.D.N.Y. 2014)..................................................................................10

*Wolinsky v. Scholastic Inc.*
   900 F. Supp. 2d 332 (S.D.N.Y. 2012)..................................................................................12

<u>Other Authorities</u>

District of Connecticut Local Rule 5(e)..................................................................................1, 2

District of Connecticut Local Rule 7(d).....................................................................................6

Fed. R. Evid. 408 .........................................................................................................11, 12, 13

Pursuant to District of Connecticut Local Rule 5(e), Defendants Prospect Medical Holdings, Inc., Prospect CT, Inc., Prospect ECHN, Inc. d/b/a Eastern Connecticut Health Network, Prospect Rockville Hospital, Inc. d/b/a The Rockville General Hospital, Prospect Manchester Hospital, Inc. d/b/a The Manchester Memorial Hospital, Prospect Waterbury, Inc. d/b/a The Waterbury Hospital, Prospect CT Medical Foundation, Inc. d/b/a Eastern CT Medical Professionals and Alliance Medical Group, Prospect ECHN Home Health, Inc. d/b/a Visiting Nurse and Health Services of Connecticut, Cardiology Associates of Greater Waterbury, LLC, Prospect CT Management Services, Inc. d/b/a Medical Practice Partners, Healthcare Staffing On Demand, LLC, Prospect Waterbury Ambulatory Surgery, LLC, and Prospect Waterbury Home Health, Inc. d/b/a VNA Health at Home (collectively, "Defendants" or "Prospect"), respectfully submit this memorandum of law in opposition to Plaintiff Yale New Haven Health Services Corporation's ("Plaintiff" or "Yale") *Motion to Seal Unredacted Reply Memorandum of Law in Further Support of Motion for Abstention and Equitable Remand* (ECF Doc. No. 33, the "Motion" or "Mot.").

## INTRODUCTION

The Motion is Yale's latest attempt to keep from the public evidence that REDACTED

As explained more fully in Prospect's memorandum of law in support of motion to transfer (ECF Doc. No. 10-1) and its memorandum of law in opposition to Plaintiff's motion for abstention and equitable remand (ECF Doc. No. 23, the "Opposition"), the evidence that Yale is now seeking to hide from public view REDACTED. While it is understandable that Yale would not want this evidence to be in the public eye, both Yale and Prospect have

-2-

addressed this evidence in their respective papers on the underlying motions, and the Court will need to consider it as part of its decisions on those motions. The Motion should therefore be denied.

In the Motion, Yale seeks to redact and seal references to certain deposition testimony of Yale's general counsel, Bill Aseltyne, that were included in Yale's reply memorandum of law in further support of motion for abstention and equitable remand (ECF Doc. No. 32, the "Reply"), and to file under seal Exhibit D to the Reply, which contains excerpts of Mr. Aseltyne's testimony (hereinafter, the "Disputed Materials"). (Mot. 6.) The Disputed Materials show that, at his deposition, Mr. Aseltyne testified REDACTED

REDACTED Both Prospect and Yale have raised or addressed the Disputed Materials in their respective briefing on the underlying motions for transfer and remand. Yale, however, argues that sealing is warranted on the grounds that: (i) the Disputed Materials consist of statements from Mr. Aseltyne that purportedly arose in the context of settlement discussions, and thus no presumption of public access can attach; (ii) sealing serves the general interest of preserving confidentiality over settlement talks; and (iii) REDACTED (*Id.* at 4-5.)

None of these arguments is persuasive. As explained in further detail below, even if Mr. Aseltyne's statements were made in the context of *bona fide* settlement discussions—and Yale has failed to establish that, either through the deposition excerpts they point to or through a declaration from Mr. Aseltyne—the Disputed Materials still enjoy a strong presumption of public access, which Yale fails to counter.

*First*, the Disputed Materials, having been relied upon by both parties in filings before this Court, are necessary for understanding the Court's adjudication process with respect to the underlying venue motions, and thus are afforded a strong presumption of access in this Circuit. This strong presumption of access cannot be overcome by a general interest in promoting settlement, nor by a mere agreement between parties to keep material confidential. Indeed, Second Circuit decisional law confirms that sealing of settlement-related communications is warranted only when certain policy considerations are met, including the interest in facilitating the continuation of the settlement discussions at issue. Those policy considerations are not present here, least of all because REDACTED—has succeeded, though not in a way that Yale planned. (*See infra* Point I.)

*Second*, REDACTED has no relevance to the question of sealing. But more importantly, REDACTED Yale has offered no evidence that Mr. Aseltyne's REDACTED were made as part of the REDACTED. Yale is also in no position to invoke that REDACTED (*See infra* Point II.)

Yale's insistence on keeping Mr. Aseltyne's testimony secret is particularly disingenuous when Yale has, for the last several weeks and months, issued public statements to the press, putting

-3-

the onus for Prospect's financial situation and even its bankruptcy filing on Prospect's own alleged "mismanagement"—completely ignoring the role that Yale's own breaches of the APA, refusal to close, and renegotiation tactics played in Prospect's distress.[1] REDACTED and should not be allowed to hide its own general counsel's statements behind a sealing motion.

Accordingly, Prospect respectfully requests that the Court deny the Motion.

### ARGUMENT

In the Second Circuit, "there is a strong and well-established presumption of public access to judicial documents and proceedings." *CSL Silicones, Inc. v. Midsun Grp. Inc.*, No. 3:14-cv-1897(CSH), 2017 WL 4750701, at *1 (D. Conn. July 12, 2017) (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20,123-24 (2d Cir. 2006)). This presumption may only be overcome

---

[1] *See, e.g.*, Katy Golvala & Dave Altimari, *Prospect Medical Holdings files for bankruptcy protection*, CT MIRROR, Jan. 12, 2025, https://ctmirror.org/2025/01/12/prospect-medical-bankruptcy-ct-hospitals-state-taxes-ynhh-deal/ (quoting a statement issued by Yale's spokeswoman Dana Marnane that Prospect's bankruptcy filing "is a national matter and of grave concern to many hospitals around the country," and that "Yale . . . raised the alarm about this inevitability in the lawsuit we filed last year, recognizing Prospect's lack of investment and mismanagement of the Connecticut Prospect hospitals."); Katy Golvala, *Deal to buy CT Prospect Medical hospitals 'impossible,' YNHH says*, CT MIRROR, Feb. 25, 2025, https://ctmirror.org/2025/02/25/prospect-medical-holdings-ynhh-sale-impossible/ (quoting email statement from Yale spokeswoman Marnane: "While YNHHS had hoped to acquire these assets and enhance the clinical care for the impacted communities, Prospect's failure over several years to pay vendors and State and local taxes and to fund their pension obligations have made this transaction impossible . . . . The bankruptcy filing is proof of their disinvestment and mismanagement."); Eric Bedner & Liese Klein, *CT officials urge Yale hospital systems, Prospect to finalize $435M deal or move on and pay debts*, CT INSIDER, Oct. 24, 2024, https://www.ctinsider.com/connecticut/article/ct-prospect-yale-new-haven-health-hospitals-lamont-19844256.php (quoting Yale statement: "Prospect, a California-based for-profit health system backed by private equity, has abandoned the communities and patients they are supposed to serve in numerous ways").

if "specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id.* (quoting *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984)). The Second Circuit has prescribed a three-step inquiry a district court should follow to determine if a document may properly be filed under seal:

> (1) [a court] determines whether the filing should be "classified as a judicial document," *i.e.*, whether it is "relevant to the performance of the judicial function and useful in the judicial process"; (2) if the record at issue is a judicial document, the court "must next determine the particular weight of th[e] presumption of access for the record at issue"; and (3) "once the weight of the presumption has been assessed, the court is required to "balance competing considerations against it."

*See Robinson v. De Niro*, No. 19-CV-09156 (LJL), 2023 WL 3728350, at *1 (S.D.N.Y. May 26, 2023) (quoting *Olson v. Major League Baseball*, 29 F.4th 59, 87–88 (2d Cir. 2022)). As detailed more fully below, the Disputed Materials are judicial documents that bear a strong presumption of public access, and Yale presents no convincing countervailing considerations to overcome that presumption.

## I. THE DISPUTED MATERIALS ENJOY A STRONG PRESUMPTION OF PUBLIC ACCESS

Case law in this Court and Circuit is clear that documents which are filed in support of a party's briefing are afforded a strong presumption of public access. *See, e.g.*, *Mirlis v. Edgewood Elm Hous., Inc.*, 581 F. Supp. 3d 394, 406 (D. Conn. 2022), *amended on reconsideration on other grounds*, No. 3:19-CV-700 (CSH), 2022 WL 522109 (D. Conn. Feb. 21, 2022) ("In this case, because the Affidavits were filed as part of a motion made by [a party] seeking action by the court, the presumption of public access is strong.") (internal citations omitted); *United States Sec. & Exch. Comm'n v. Ahmed*, No. 3:15CV675 (JBA), 2017 WL 5515907, at *1 (D. Conn. Sept. 19, 2017) (denying motion to seal deposition transcript excerpts designated as confidential by the parties, noting that "the Court will not seal Exhibit 8 simply because the parties have designated it

as confidential . . . Because the document in question was filed as part of a motion made by Oak seeking action by the court, the presumption of public access is strong"); *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 167 (S.D.N.Y. 2018) (denying motion to seal settlement and arbitration agreements where defendant failed to articulate countervailing factors to the strong presumption of access to documents submitted to the court "as part of the process of adjudication"); *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004) ("As we have noted, these documents, which related to the court's ruling on a motion for summary judgment, were presumptively subject to public access.").

Here, both Prospect and Yale have addressed the Disputed Materials as part of their respective briefing: Prospect raised Mr. Aseltyne's deposition testimony REDACTED in its Opposition and supporting exhibits, as well as its reply in further support of its motion to transfer (ECF Doc. No. 25). Yale, in turn, made its own arguments regarding the import and significance of the Disputed Materials in its Reply and supporting exhibits. Because both parties incorporated and addressed the Disputed Materials in their briefing before this Court on the issue of remand and transfer, the case law is clear that there is a strong presumption of public access.

Yale, however, argues that the Disputed Materials do not enjoy the presumption of public access because they contain statements from Mr. Aseltyne concerning confidential settlement communications. (Mot. 3-4.) As a threshold issue, Yale has failed to substantiate this contention as a factual matter: Mr. Aseltyne did not submit a declaration to this effect,[2] and the excerpts of

---

[2] By opting not to file a declaration from Mr. Aseltyne as part of its moving papers, Yale has waived any right to file one *post hoc* on reply (to which Prospect would be unable to respond per this Court's Local Rule 7(d), which prohibits sur-replies without permission of the Court upon a showing of good cause). "[I]t is well established that a party cannot attempt to cure deficiencies in its moving papers by introducing new evidence in its reply when the effect would be to deprive

his deposition transcript in the Disputed Materials do not meet Yale's high burden to demonstrate that Mr. Aseltyne's comments REDACTED were made as part of settlement discussions, REDACTED. While Mr. Aseltyne's testimony does refer to settlement talks between the parties at various times, it is not at all clear from the transcript that the statements relied upon by Prospect in its Opposition, and disputed by Yale in its Reply, were made as part of settlement discussions.

Regardless, *even if* the statements at issue in the Disputed Materials were made during the course of settlement discussions, this still does not overcome the presumption of public access. The law is clear in this Circuit that, even though the presumption of public access is weaker with respect to settlement communications, the presumption still holds with respect to settlement communications that are raised in the parties' papers on a motion, and may need to be addressed by the Court in its ruling on that motion. *See Agence France Presse v. Morel*, No. 10-CV-2730 AJN, 2014 WL 5568562, at *2 (S.D.N.Y. Nov. 3, 2014) ("[W[hile the underlying information may come from [settlement] documents to which only a weak presumption of access attaches, it is contained in a document that could prove material to the Court's disposition of the dispute on the merits—which is on the opposite end of the 'presumption of access' continuum.") (citing *United States v. Graham*, 257 F.3d 143, 150-51 (2d Cir. 2001)). Here, both parties have addressed the Disputed Materials in their respective papers on Yale's remand motion (as well as Prospect's

---

the opposing party of any opportunity to respond." *D'Alessandro v. Arrow Pharmacy Holdings, LLC*, No. 3:20-CV-536 (SVN), 2023 WL 1967245, at *5 (D. Conn. Feb. 13, 2023) (internal quotation marks omitted); *see also Prange v. Arszyla*, No. 3:22-CV-1133 (JCH), 2023 WL 7277256, at *4 n.4 (D. Conn. July 10, 2023) (declining to consider "five additional exhibits" that plaintiff attached to her reply in response to defendant's argument, in opposition to the motion, that plaintiff "has not presented any evidence that 'demonstrated the interrelation between the claims,'" explaining that the "court does not consider these exhibits because, generally, 'a party may not attempt to cure deficiencies in its moving papers by including new evidence in its reply to opposition papers'") (citations omitted).

transfer motion), making them relevant to the resolution of the underlying motions and possibly affecting the Court's adjudication of the case. Accordingly, even if the statements memorialized in the Disputed Materials were part of settlement discussions, they "cease to be information with 'no value to those monitoring the exercise of Article III judicial power by the federal courts,' and become potentially necessary to understanding the Court's decision." *Morel*, 2014 WL 5568562, at *2 (determining that a strong presumption of public access attached to settlement amounts because they were incorporated into the defendants' memorandum of law); *see also Robinson*, 2023 WL 3728350, at *1 (finding a strong presumption of access attached to references to a settlement proposal in documents filed in support of a motion for summary judgement, and denying request to redact such material); *O'Reilly*, 307 F. Supp. at 167 (denying motion to seal settlement and arbitration agreements filed in connection with defendant's motion, noting that the defendant "relies on the agreements in support of his Motion for this Court to exercise its Article III adjudicatory powers. When this Court issues its Opinion on his Motion, the public deserves to see what judicial document it relied on.").

Yale relies upon *United States v. Glens Falls Newspapers, Inc.,* 160 F.3d 853 (2d Cir. 1998), to argue that sealing is warranted here because there is a strong competing public interest in encouraging amicable resolution of disputes through settlement. (Mot. 4.) As an initial matter, *Glen Falls* is distinguishable on its facts: it involved a non-party newspaper's motion to intervene for the purpose of vacating a protective order prohibiting disclosure of settlement negotiations that, unlike here, were never before the Court. *See Glen Falls*, 160 F.3d at 854-55. Further, *Glen Falls* shows that settlement communications are not entitled to absolute confidentiality in all circumstances, and that the decision to overcome the presumption of public access is based on specific policy considerations that must be applied on a case-by-case basis. Ultimately, *Glen Falls*

supports Prospect's position, not Yale's, because the specific policy considerations relied upon by the Second Circuit there are not present here.

The Court's holding in *Glen Falls*, denying the newspaper's motion to intervene for the purpose of vacating a protective order over settlement materials, was based squarely on the policy concern that giving the newspaper access to draft settlement documents would chill ongoing settlement efforts in a decade long conflict that was nearing resolution:

> Recognizing that fostering settlement of any case or controversy is an Article III function, and that courts have an even larger role in settling cases such as this affecting the public interest, we agree with the trial court that settlement negotiations in this case would be chilled to the point of ineffectiveness if draft materials were to be made public.
>
> . . .
>
> We also conclude that release of these discussions and documents is likely to impair materially the trial court's performance of its Article III function of crafting a settlement of this case. The need for a fair and efficient resolution through settlement of this complex, expensive, ten-year-old case of great public importance far outweighs the negligible presumption of access to settlement materials.

*Id.* at 857-58. Furthermore, the Court in Glen Falls specifically noted that the settlement documents were never "presented to the court to invoke its powers or affect its decisions." *Id*. at 857.

Here, unlike in *Glen Falls*, the publication of the Disputed Materials will not prevent ongoing settlement efforts or "impair materially the trial court's performance of its Article III function" *Id.* at 858. Furthermore, no settlement was ever reached between Yale and Prospect, and the Disputed Materials were indeed "presented to the court" through incorporation in the parties' briefing. Indeed, the fact that Yale and Prospect have not settled their dispute is a key

factor that weighs against sealing here, and distinguishes *Glen Falls* and other cases cited by Yale.[3] *See, e.g.*, *Robinson*, 2023 WL 3728350, at *2 ("Plaintiff is correct that generally a strong public interest in encouraging amicable resolution of disputes weighs against public disclosure of settlement communications . . . However, this interest is less strong here.  This case is distinguishable from situations where parties relied on the confidentiality of settlement information in order to reach a settlement, or where a party would not have settled but for an assurance of confidentiality. . . . No settlement was reached here.") (internal citations and quotations omitted); *Wells Fargo Bank, N.A. v. Wales LLC*, 993 F. Supp. 2d 409, 413 (S.D.N.Y. 2014) (rejecting plaintiff's reliance on *Glen Falls*, noting that "the countervailing policy in favor of encouraging settlement discussions is not a factor here; settlement negotiations between Battenkill and Assured with respect to this agreement are not ongoing").

Accordingly, the Disputed Materials still enjoy the presumption of public access.

---

[3] For example, Yale relies upon *Gambale, v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004) (*see* Mot. 5), but that case is distinguishable for just this reason.  In *Gambale*, the Second Circuit held that the district court should not have revealed the confidential settlement amount reached by the parties, noting that "there may well be valid reasons in this and other cases *terminated by settlement* for maintaining the amount of settlement in confidence *when the settlement itself was conditioned on confidentiality* and when *the settlement documents were not filed with the court and were not the basis for the court's adjudication*."  377 F.3d at 143 (emphasis added).  As explained above, neither of these factors is present:  this case was not terminated by settlement (there has been no settlement), and the alleged settlement communications in the Disputed Materials were incorporated into the parties' memoranda of law and thus could impact the Court's adjudication.  *See also O'Reilly*, 307 F. Supp. 3d at 169 n.2 ("Defendant's citation to *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 143 (2d Cir. 2004), is inapposite.  In that case, the Second Circuit held that when confidential 'settlement documents were not filed with the court and were not the basis for the court's adjudication,' there may be no presumptive right of public access to those documents.  Such is not the case here, where Defendant O'Reilly moves the Court to enforce the very agreements he seeks to file under seal.").

II. **REDACTED CANNOT OVERCOME THE STRONG PRESUMPTION OF PUBLIC ACCESS**

Notwithstanding the strong presumption of public access, Yale contends that sealing the Disputed Materials is appropriate because REDACTED (Mot. 5.) This argument fails because Yale has failed to establish that the statements at issue in the Disputed Materials were part of REDACTED

*First*, as noted *supra* Point I, Yale has not provided any evidence that the relevant testimony about REDACTED in the Disputed Materials actually reflected settlement discussions, let alone that the Disputed Materials REDACTED Not only has Yale has failed to offer sufficient evidence that Mr. Aseltyne's statements were even REDACTED such as through a declaration from Mr. Aseltyne confirming the same, but the Disputed

Materials themselves do not substantiate the claim. REDACTED REDACTED.[4]

*Second*, even if the statements in the Disputed Materials do REDACTED REDACTED REDACTED Indeed, "Courts in this District have long held that bargained-for confidentiality does not overcome the presumption of access to judicial documents." *O'Reilly*, 307 F. Supp. 3d at 168 (collecting cases); *see also Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 338 (S.D.N.Y. 2012) ("[T]he presumption of public access would become virtually meaningless if it could be overcome by the mutual interest of the parties in keeping their settlement private."). As discussed *supra* Point I, the Disputed Materials constitute judicial documents to which the public presumptively has access because the parties incorporated them into their papers on the underlying motions, thus making them relevant to the resolution of those motions.

*Third*, FRE 408 is irrelevant where, as here, the communication is offered for purposes *other* than proving or disproving the validity or amount of a disputed claim. Indeed, "Rule 408 only precludes the admission of settlement discussions to 'prove or disprove the validity or amount of a disputed claim' or for impeachment purposes. Fed. R. Evid. 408(a). It does not, however, preclude the use of such communications for 'another purpose,'" such as what all parties have

---

[4] For Yale to now invoke REDACTED to shield Mr. Aseltyne's statement from public disclosure is, to put it lightly, inconsistent given Yale's history of REDACTED into pleadings in the underlying action. Most prominently, on October 22, 2024, Yale requested to amend its complaint to include REDACTED Unlike the statements recounted in Mr. Aseltyne's testimony, REDACTED In contrast, as noted above, Yale has provided no evidence that Mr. Aseltyne's statements REDACTED

done here.  *See Robinson*, 2023 WL 3728350 at *2-3 (denying plaintiff's request to redact substance of, and references to, settlement communications, noting that the communications provided "essential" context for timing of events and for plaintiff's retaliation claim).  The parties have not used Mr. Aseltyne's testimony to prove or disprove the validity or amount of a disputed claim, but rather to argue for and against remand or transfer, respectively.  Accordingly, FRE 408 has no relevance to the question of whether the Disputed Materials should be sealed.

## CONCLUSION

Accordingly, for the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion.

Respectfully submitted,

By: */s/ Robert S. Friedman*
Robert S. Friedman (ct31256)
Danielle Vrabie (*pro hac vice* application forthcoming)
Joshua I. Schlenger (admitted *pro hac vice*)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
30 Rockefeller Plaza
New York, NY 10112-0015
(212) 653-8700
rfriedman@sheppardmullin.com
dvrabie@sheppardmullin.com
jschlenger@sheppardmullin.com

Amy P. Blume, Esq.
Bershtein, Volpe, & McKeon, PC 900 Chapel Street, 11th Floor New Haven, CT 06510
Juris # ct03821
Tel. # (203) 777-5800
apb@bvmlaw.com

*Counsel for Defendants*