UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| YALE NEW HAVEN HEALTH SERVICES CORPORATION,<br><br>    *Plaintiff*,<br><br>    v.<br><br>PROSPECT MEDICAL HOLDINGS, INC., PROSPECT CT, INC., PROSPECT ECHN, INC. D/B/A EASTERN CONNECTICUT HEALTH NETWORK, PROSPECT ROCKVILLE HOSPITAL, INC. D/B/A THE ROCKVILLE GENERAL HOSPITAL, PROSPECT MANCHESTER HOSPITAL, INC. D/B/A THE MANCHESTER MEMORIAL HOSPITAL, PROSPECT WATERBURY, INC. D/B/A THE WATERBURY HOSPITAL, PROSPECT CT MEDICAL FOUNDATION, INC. D/B/A EASTERN CT MEDICAL PROFESSIONALS AND ALLIANCE MEDICAL GROUP, PROSPECT ECHN HOME HEALTH, INC. D/B/A VISITING NURSE AND HEALTH SERVICES OF CONNECTICUT, CARDIOLOGY ASSOCIATES OF GREATER WATERBURY, LLC, PROSPECT CT MANAGEMENT SERVICES, INC. D/B/A MEDICAL PRACTICE PARTNERS, HEALTHCARE STAFFING ON DEMAND, LLC, PROSPECT WATERBURY AMBULATORY SURGERY, LLC, AND PROSPECT WATERBURY HOME HEALTH, INC. D/B/A VNA HEALTH AT HOME,<br><br>    *Defendant*. | No. 3:25-cv-00105-MPS |

**RULING ON PLAINTIFF'S MOTION TO REMAND AND DEFENDANT'S MOTION**

**TO TRANSFER**

1

This case involves a breach of contract claim brought in Connecticut Superior Court before it was removed to federal court and assigned to me. The Plaintiff, Yale New Haven Health Services ("YNHH"), has filed a motion to remand this action to state court, primarily under 28 U.S.C. § 1334(c)(2). Meanwhile, the Defendants, Prospect Medical Holdings, Inc. and some of its subsidiaries (collectively, "Prospect"), have filed a motion to transfer this case to the U.S. Bankruptcy Court for the Northern District of Texas, primarily under 28 U.S.C. § 1412. For the reasons below, I GRANT YNHH's motion to remand, and I DENY Prospect's motion to transfer.

I. FACTUAL BACKGROUND

A. The State Case

On May 1, 2024, YNHH filed suit in the Connecticut Superior Court alleging three counts of breach of contract against Prospect. ECF No. 1-1 at 72-76. The suit arose in the context of YNHH's prospective purchase of three hospitals and affiliated facilities from Prospect for $435 million. ECF No. 10-1 at 7-8. The terms of the contemplated transaction were set forth in an asset purchase agreement ("APA"). *Id.*

YNHH alleges that Prospect violated covenants set forth in the APA and seeks a declaratory judgment that it is not required to close the transaction. ECF No. 11-1 at 12-13 ("Prospect has failed to comply with the required closing conditions . . . by breaching interim covenants that prescribe how Prospect must operate the Businesses between the time of signing and closing."); ECF No. 1-1 at 77 (YNHH's Prayer for Relief). In response, Prospect asserted counterclaims against YNHH alleging that YNHH violated both the APA and the Connecticut Unfair Trade Practices Act, CONN. GEN. STAT. §§ 42-110 *et seq.*, and sought either an order requiring YNHH to close on the transaction or damages. ECF No. 11-1 at 14-15. On June 14, 2024,

2

the case was placed on the Complex Litigation Docket,[1] with discovery set to close on January 28, 2025. ECF No. 10-1 at 8. Trial was scheduled for April 2025. ECF No. 11-1 at 9. On December 23, 2024, YNHH filed a motion for summary judgment. *Id*.

### B. Removal to Federal Court

Shortly thereafter, on January 11, 2025, Prospect filed for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the Northern District of Texas. *In re Prospect Med. Holdings, Inc.*, No. 25-80002-SGJ11 (Bankr. N.D. Tex. Jan. 11, 2025). Following the commencement of Prospect's bankruptcy case, the state law action was automatically stayed.[2] ECF No. 10-1 at 9. On January 22, 2025, the case was removed to this Court,[3] ECF. No. 1, and on January 27, 2025, Prospect moved to transfer the case to the bankruptcy court in the Northern District of Texas. ECF No. 10. The next day, YNHH moved to remand the case back to Connecticut Superior Court. ECF No. 11. In response to these motions, both YNHH and Prospect then filed further briefing. ECF Nos. 21, 23, 25, 32, and 52.

---

[1] The Complex Litigation Docket was established to resolve "some of the most challenging civil cases" that "involve multiple litigants, legally intricate issues or claims for damages that could total millions of dollars." *Facts About the Connecticut Judicial Branch Complex Litigation Docket*, CONN. JUD. BRANCH (Jun. 5, 2018), https://www.jud.ct.gov/external/super/FACTS_092020.pdf.

[2] *See* 11 U.S.C. § 362(a) ("[A] petition filed under section 301 . . . of this title . . . operates as a stay, applicable to all entities, of (1) the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title . . . .").

[3] Removal was proper as the Court had subject matter jurisdiction. 28 U.S.C. § 1452(a) says, "A party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." And 28 U.S.C. 1334(b) gives this Court "original but not exclusive jurisdiction of all civil proceedings . . . related to cases under title 11." Both parties agree that the state court action is at least "related to" the bankruptcy case. ECF No. 10-1 at 14; ECF No. 11-1 at 10.

3

## II.     LEGAL STANDARD

In seeking remand to state court, YNHH primarily relies upon 28 U.S.C. § 1334(c)(2). And in seeking transfer to the bankruptcy court in Texas, Prospect asks the Court to apply either 28 U.S.C. § 1412 or 28 U.S.C. § 1404(a).

### A. 28 U.S.C. § 1334

Section 1334 of Title 28 of the U.S. Code concerns the federal district courts' jurisdiction over Chapter 11 cases and cases associated with Chapter 11 cases. It provides the district courts with original and exclusive jurisdiction "of all cases under title 11." 28 U.S.C. § 1334(a). And it also provides district courts with original (but not exclusive) jurisdiction "of all civil proceedings *arising under* title 11, or *arising in* or *related to* cases under title 11." 28 U.S.C. § 1334(b) (emphasis added). But "nothing in [Section 1334] prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). Further, a district court *must* abstain from hearing proceedings related to a Title 11 case under certain conditions:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). This provision mandates abstention if five requirements are satisfied: (1) a party must file a timely motion; (2) the motion must have been filed in a proceeding based upon a state law claim; (3) the state law claim must be related to title 11 but not arise under title 11 or arise in a case under title 11; (4) Section 1334 must supply the only basis for federal court

4

jurisdiction over the state law claim; and (5) the state court in which the action was commenced must be able to timely adjudicate the claim.

### B. 28 U.S.C. §§ 1412 and 1404(a)

Sections 1412 and 1404 of Title 28 of the U.S. Code are change of venue statutes. While Section 1412 provides for transfer of cases and proceedings "under title 11," Section 1404(a) provides for transfer of civil actions generally. 28 U.S.C. § 1412 reads in full, "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." And 28 U.S.C. § 1404(a) says, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

### III. DISCUSSION

Taken together, the motions to remand and transfer raise two central questions. First, must I rule on the motion to remand before ruling on the motion to transfer? And second, assuming that I must, do the elements of Section 1334(c)(2) apply to this case such that remand is required? I address each question in turn.

### A. Which Motion Should be Addressed First?

"[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." *Sinochem Intern. Co. Ltd v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 431 (2007) (internal quotations omitted). In the context of competing motions for remand and transfer, courts typically exercise that leeway by considering the remand motion before the transfer motion. *Renaissance Cosmetics Inc.* v. *Development Specialists Inc.*, 277 B.R. 5, 11 (S.D.N.Y. 2002) ("[C]ourts faced with cross-motions for remand and change of venue consider the remand

motion first and, if remand is denied, turn to the motion for change of venue."). Here, there is no reason to deviate from this practice—especially because addressing the motion to remand first would better serve the interest of judicial economy.

Before Prospect removed this case from state court, trial was scheduled and YNHH had moved for summary judgment. Assuming that both remand and transfer are warranted, addressing the motion to remand first would put this case back in its advanced procedural posture before a state judge familiar with the facts and legal arguments. In the alternative, there are two possible outcomes if I were to instead transfer the case (and the motion to remand) to the bankruptcy court in Texas. The first outcome is that the bankruptcy court might deny the motion to remand and keep the case. In that event, the judicial resources spent on litigating this case in the state forum would be wasted, and new costs would be imposed on the federal courts, as the bankruptcy court familiarized itself with the case and rendered a decision, which would then be subject to *de novo* review by the U.S. District Court for the Northern District of Texas. 28 U.S.C. § 158(a) ("The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.") [4]; *VSP Labs, Inc. v. Hillair Capital Investments LP*, 619 B.R. 883, 894 (N.D. Tex. Aug. 21, 2020) ("A bankruptcy court's . . . conclusions of law are reviewed *de novo*.") (internal quotations and citations omitted). Such a two-tiered adjudication would obviously be less efficient than returning the case to state court in an advanced procedural posture. The second outcome is that the

---

[4] Instead of first-level review by the district court, some circuits have bankruptcy appellate panels ("BAPs"). *See* 28 U.S.C. § 158(b)(1) ("The judicial council of a circuit shall establish a bankruptcy appellate panel service . . . to hear and determine, with the consent of all the parties, appeals under subsection (a).") The Fifth Circuit does not have a BAP.

bankruptcy court might grant the motion. In that event, this case would be in the exact same position it stands now, except that at least one other court (besides this one) would have had to spend its precious time adjudicating this motion. Accordingly, this Court will exercise its discretion to prevent the needless expenditure of judicial time and attention by addressing the motion to remand first.

### B. Does This Case Satisfy the Elements of 28 U.S.C. § 1334(c)(2)?

Having decided that the motion to remand should be addressed first, I must next decide whether this case satisfies the elements for mandatory abstention set forth in 28 U.S.C. § 1334(c)(2). I find that it does. First, it is undisputed that the case involves a state law claim. YNHH initiated this action asserting state contract law claims, and Prospect filed counterclaims for breach of the same contract and for alleged violations of a state statute. ECF No. 11-1 at 14-15. Second, Section 1334 was the sole basis for this Court's jurisdiction at the time of removal. Neither party has raised a federal question and complete diversity of citizenship is lacking. Like YNHH, the majority of entities that constitute Prospect are citizens of Connecticut. Third, I find that the Connecticut Superior Court is "a State forum of appropriate jurisdiction" where the action was "commenced"—a finding that the parties do not appear to dispute.

Fourth, neither party contests, and I agree, that this action is at least "related to" the bankruptcy case. *See* ECF No. 10-1 at 14; ECF No. 11-1 at 10. A proceeding is related to a case under Title 11 when the proceeding could have a conceivable effect on the estate. *In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 114 (2d Cir. 1992) ("The test for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have any 'conceivable effect' on the bankrupt estate. If that question is answered affirmatively,

7

the litigation falls within the 'related to' jurisdiction of the bankruptcy court."). And, as YNHH acknowledges, this case "could result in cash proceeds for the estate." ECF No. 11-1 at 10.

Fifth, YNHH's motion was timely. The general removal statute requires that motions to remand based on "any defect other than lack of subject matter jurisdiction . . . be made within 30 days after the filing of the notice of removal . . . ." 28 U.S.C. § 1447(c). But this case was not removed under that statute, and YNHH is not seeking remand on the basis of any defect. Instead, it is availing itself of the abstention provided in Section 1334. 28 U.S.C. § 1447(c) therefore does not apply. Instead, YNHH has argued that timeliness, in the context of a Section 1334(c)(2) motion, is determined in a "flexible, case-specific" manner—a point that Prospect does not contest. ECF No. 11-1 at 13. But I don't need to decide whether YNHH's proposed test is correct. That is because under any reasonable standard, the motion was timely. YNHH's motion to remand was filed on January 28, 2025, just six days after Prospect removed the case to this Court.

There are two more elements to address, and these are the elements in dispute. First, the parties dispute whether this case "arises under" Title 11 or "arises in a case under" Title 11. Second, they dispute whether this case can be "timely adjudicated" in Connecticut state court. I agree with YNHH on both points.

1. Is this case a core proceeding?

When a proceeding "arises under" Title 11 or "arises in a case under" Title 11, the proceeding is commonly referred to as a "core" proceeding. *Cf.* 28 U.S. § 157(b) ("Bankruptcy judges may hear and determine all cases under title 11 and all *core proceedings* arising under title 11, or arising in a case under title 11 . . . .") (emphasis added). A proceeding "arises under" Title 11 when it "clearly invoke[s] substantive rights created by federal bankruptcy law" or "could only arise in the context of a bankruptcy case." *MBNA America Bank, N.A. v. Hill*, 436 F.3d 104, 108-09

(2d Cir. 2006). It's clear that this case does not arise under Title 11. The parties' claims (and counterclaims) all arise under the common law and Connecticut statutes.

A proceeding "arises in a case under" Title 11 when it involves "claims that are not based on any right expressly created by [T]itle 11, but nevertheless, would have no existence outside of the bankruptcy." *Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010) (internal quotations omitted). For example, a claim of legal malpractice based on services provided during a Title 11 proceeding "would have no practical existence *but for* the bankruptcy." *Id*. (emphasis in original). Again, it's clear that this case does not "arise in a case under" Title 11. The claims in this case *did* have an existence outside the bankruptcy, as the suit was initiated on May 1, 2024, and Prospect did not file for Bankruptcy until January 11, 2025. Because this case does not "arise in or under" Title 11, it is not a core proceeding.

Prospect relies, in part, on 28 U.S.C. § 157(b)(2) to argue that the case *is* a core proceeding. *See, e.g.*, ECF 10-1 at 13. That provision provides a non-exhaustive list of particular proceedings that are defined as core. Specifically, Prospect invokes 28 U.S.C. §§ 157(b)(2)(A)–(C). Those subsections define as "core" proceedings that involve: (2)(A) "matters concerning the administration of the estate"; (2)(B) "allowance or disallowance of claims against the estate . . ."; and (2)(C) "counterclaims by the estate against persons filing claims against the estate." This case does not fall within any of those subsections. First, because this case does not involve "claims against the estate," neither (2)(B) nor (2)(C) apply. Also, this case does not *concern* the administration of the estate under (2)(A). Prospect argues that because this case will determine whether "$435 million worth of . . . assets . . . are or are not part of the estate," the case therefore "touches on fundamental issues of estate administration." ECF No. 23 at 9. It may be true that the disposition of this case will impact the estate and therefore its administration. But that does not

9

suggest that this case concerns the estate's administration. The Second Circuit has rejected such an argument. *See In re Orion Pictures Corp*, 4 F.3d 1095, 1102 (2d Cir. 1993) (holding that a pre-petition, breach-of-contract action is not a core proceeding). *Orion Pictures* rejects the proposition that a claim concerns the administration of the estate merely because "the claim if collected would inure to the benefit of the estate." *Id*. (internal quotations omitted).

Prospect also argues when a debtor in a proceeding "seek[s] to adjudicate their property rights," that proceeding is core. ECF No. 23 at 9 (citing, among others, *Marah Wood Prods., LLC v. Jones*, 534 B.R. 465, 474 (D. Conn. 2015)). *Marah Wood* involved an interpleader action in which there were competing claims to a property interest in a fund. But this is not an interpleader case or a case about competing claims to property. This case is a contract dispute and concerns whether the terms of the contract were or were not honored. Finally, Prospect argues that a determination of whether this case is core "is best made by the Texas Bankruptcy Court." ECF No. 23 at 6. I disagree, as the bankruptcy court's determination would be subject to *de novo* review on appeal. *Mirant Corp. v. The Southern Co.*, 337 B.R. 107, 115 n.11 (N.D. Tex. Jan. 10, 2006) ("Section 157(b)(3) of title 28 says the bankruptcy judge shall determine whether a proceeding is core or non-core . . . . [Such determinations are] nevertheless . . . conclusions of law to be reviewed *de novo*.").

2. Can this case be timely adjudicated in state court?

Prospect notes the case is currently stayed under 11 U.S.C. § 362. ECF No. 10-1 at 9. That is true, of course, of all cases to which Section 1334(c)(2) applies because the bankruptcy stay is automatic upon the filing of the bankruptcy. "[A] petition filed under [Chapter 11] . . . operates as a stay . . . of the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the

commencement of the case under this title . . . ." 11 U.S.C. § 362(a)(1). If the mere filing of a bankruptcy, and the accompanying automatic stay, meant that the state forum could not "timely adjudicate" the case, then Section 1334(c)(2) would be rendered a nullity. The stay, therefore, does not impact whether this case can be timely adjudicated.

Rather, this case can be timely adjudicated in the state forum because it satisfies the four-factor analysis for timeliness set forth in *Parmalat Capital Finance Ltd. v. Bank of America Corp*. 639 F.3d 572 (2d Cir. 2011). Those factors are:

> (1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate.

*Id.* at 580. The first two factors are relative measures. They effectively ask whether the state court or the federal court is busier and which court, on the basis of expertise, is better suited to address the case given the case's complexity. As to the first factor, there is no reason to believe—and the parties have not suggested—that the Complex Litigation Docket of the Superior Court is any busier than this Court. As to the second factor, I find it significant that, before it was removed, this case was in the end-stages of discovery before a judge with the requisite subject matter expertise to adjudicate questions of Connecticut state law. Accordingly, I find that the Connecticut Superior Court is comparatively better suited to address this case.

Factors three and four relate to urgency. Factor three asks whether the state law claims need "to be quickly resolved as a result of the status of the ongoing title 11 bankruptcy proceeding." *Id.* at 581. Similarly, under factor four, a state law claim "cannot be timely adjudicated in state court if abstention . . . will unduly prolong the administration of the estate." *Id.* Assuming the state law claims here require quick resolution, remanding to state court would not "prolong the

administration of the estate." Remanding would expedite it. YNHH filed suit on May 1, 2024, and Prospect did not initiate its bankruptcy proceedings until January 11, 2025. During that time, discovery had neared completion, a trial date was set, and YNHH had moved for summary judgment. Once the stay is lifted, this action would be nearly ripe for final adjudication in the state court. Prospect would file its response to YNHH's motion for summary judgment and the state court would render a decision. The case would then either be resolved or proceed to trial. Alternatively, if this case were transferred to the bankruptcy court, that court would first need to familiarize itself with the case. It would then need to resolve not just this case, but all claims against the estate. And that resolution would not be final. Instead, it would be subject to *de novo* review by a district court. Factors three and four clearly support timely adjudication in the state forum.

## IV.   CONCLUSION

Because I have found that the elements of Section 1334(c)(2) are satisfied, I must abstain from exercising jurisdiction over this case. I therefore do not address whether discretionary transfer of this case under either 28 U.S.C. § 1412 or § 1404(a) would serve the ends of justice or convenience. Nonetheless, because these statutes both contemplate transfer *from* a federal district court, rather than transfer from a state court, transfer will no longer be possible once the case is remanded. Accordingly, YNHH's motion to remand (ECF No. 11) is GRANTED and Prospect's motion to transfer (ECF No. 10) is DENIED.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
       July 22, 2025